[No. B175149. Second Dist., Div. Six. Jan. 25, 2006.]

DAVID J. DUNN, as Trustee, etc., Plaintiff and Appellant, v. COUNTY OF SANTA BARBARA, Defendant and Respondent.

1282

## COUNSEL

Hatch & Parent, Diane M. Matsinger; Bornholdt, Peron & Pratt and Kenneth C. Bornholdt for Plaintiff and Appellant.

Stephen Shane Stark, County Counsel, Alan L. Seltzer, Chief Assistant County Counsel, and Kelly A. Casillas, Deputy County Counsel, for Defendant and Respondent.

## OPINION

PERREN, J.—The owner of a six-acre parcel in Summerland filed an application to subdivide that property, which is zoned for a single-family residence, into two 3-acre parcels. As presently configured, two residences could conceivably be developed on the parcel. The County of Santa Barbara (County) determined, however, that the property was subject to development restrictions pursuant to state laws and local regulations enacted for the protection of wetlands and environmentally sensitive habitat areas. After identifying two artificially created wetlands totaling approximately one-fifth of an acre, the County concluded that only one residence could be built on the property, and accordingly denied the subdivision application. Appellant David J. Dunn, as trustee of a family trust that owns the subject property, thereafter filed a petition for a writ of administrative mandate (Code Civ. Proc., § 1094.5), combined with a complaint alleging, among other things, that the County's regulations had taken his property without compensation in violation of the takings clause of the Fifth Amendment of the United States Constitution.

Dunn subsequently moved for summary adjudication of his writ petition pursuant to Code of Civil Procedure section 437c, subdivision (f), and alternatively moved for judgment pursuant to Code of Civil Procedure section 1094, on the grounds that the County had not proceeded in the manner required by law and that the County's decision was not supported by the evidence (Code Civ. Proc., § 1094.5, subd. (b)). The trial court denied Dunn's motion for summary adjudication of the petition on procedural grounds, denied the motion for judgment, and accordingly denied the writ petition. The court also granted the County's motion for judgment on the pleadings as to the complaint, finding that Dunn could not state a claim for a physical taking, that his regulatory takings claims were not ripe for adjudication, and that the remaining constitutional claims were premature because they derived from the unripe takings claims.

We agree with the trial court that the summary adjudication procedure was improperly invoked. Where, as here, an administrative mandamus proceeding purportedly presents no triable issue of fact or is based solely on the administrative record, the proper procedure is a motion for judgment on the writ pursuant to Code of Civil Procedure section 1094. We also concur in the trial court's conclusion that the County proceeded in the manner required by law as contemplated by Code of Civil Procedure section 1094.5, subdivision (b). The challenged regulations pursuant to which that decision was made are consistent with the California Coastal Act's (Coastal Act) stated goal to "[p]rotect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources." (Pub. Resources Code,[1] § 30001.5, subd. (a).) Moreover, substantial evidence supports all of the findings essential to the County's decision.

We agree with Dunn, however, that his regulatory takings claims are ripe for adjudication because the County issued what amounts to a final decision that it lacks discretion to grant any subdivision of his property, and the permissible use of the property—the development of one single-family residence—is known to a reasonable degree of certainty. Accordingly, we reverse the judgment in favor of the County on those claims, as well as the constitutional and civil rights claims that were deemed not ripe on the same ground. In all other respects, we affirm.

## FACTS AND PROCEDURAL HISTORY

On July 31, 1995, Dunn (as trustee of the Dunn Family Trust) submitted an application to subdivide his 6.05-acre parcel of property into two separate lots of 3.025 acres. The property, which is located on a sea cliff on Padaro Lane

---

[1] All further statutory references are to the Public Resources Code unless otherwise noted.

in the unincorporated area of Summerland, is zoned for single-family residential use with a minimum parcel size of three acres. The original parcel, one of four lots created by a 1986 parcel map, had two potential building envelopes located on each side of an active earthquake fault that diagonally bisects the property. The two building sites were intended to identify alternative sites for one building, and not necessarily to facilitate further subdivision.

Because the property is located within the coastal zone, it is under the jurisdiction of the California Coastal Commission (Commission) and is subject to the provisions of the Coastal Act (§ 30121), as well as the County's local coastal plan (LCP). In applying for the subdivision, Dunn submitted a biological report prepared by LSA, Inc. (LSA), which indicated the presence of "a small, isolated and artificial/degraded wetland" (fn. omitted) of approximately 0.16 acres (Area A). The report concluded that Area A qualified as a wetland "because it has wetland hydrology, hydrophytic vegetation, and hydric soils as those terms are generally and broadly understood."[2] LSA subsequently supplemented its report to address another small area of approximately 0.005 acres which also had wetland features (Area B).

In reviewing Dunn's application, the County retained Padre Associates to independently evaluate the property. That evaluation also identified Areas A and B as wetlands, and concluded that those areas were of significant existing and potential value to wetland plant and animal species. The County also concluded the wetlands were entitled to protection as environmentally sensitive habitat areas (ESHA) under the LCP.

The County determined that required building setbacks applicable to the property included a 100-foot "buffer" from the boundaries of the wetlands, 75 feet from the coastal bluff, and 100 feet from the proposed septic system to the edge of the arroyo. The environmental impact report (EIR) prepared pursuant to the application subsequently noted that "[t]he project site wetlands are entirely located on Parcel 1, with 0.16 acres within the designated building envelope. Although 0.02 acres would remain following full development within the building envelope, alteration of topography and soils associated with grading would likely result in the loss of wetlands in this area."

In reliance on the EIR's conclusions, the County Planning Commission denied Dunn's application. The County Board of Supervisors subsequently denied Dunn's appeal on the ground that it could not make the findings required to grant the application in that approval of the proposed lot split

---

[2] The guideline referenced is the Statewide Interpretive Guideline for Wetlands and Other Wet Environmentally Sensitive Habitat Areas (Interpretive Guideline), adopted February 4, 1981, by the Commission.

would be inconsistent with various regulations, including the LCP (which was certified by the Commission) and the Summerland community plan.

After the board of supervisors denied Dunn's appeal, he filed a petition for a writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5, along with a complaint for damages alleging violations of constitutional and civil rights and causes of action for regulatory and physical takings of his property. The writ petition alleged that the County had abused its discretion by failing to proceed in the manner required by law (Code Civ. Proc., § 1094.5, subd. (b)), and by issuing findings that were not supported by the evidence (*ibid.*). By stipulation, the administrative mandamus proceedings were bifurcated and heard first.

On July 19, 2002, Dunn filed a self-styled "motion for summary adjudication of issues or, alternatively, motion for judgment on peremptory writ of mandate/mandamus." The summary adjudication procedure was invoked pursuant to Code of Civil Procedure section 437c, subdivision (f)(1). The motion for judgment was brought under Code of Civil Procedure section 1094 "on the basis that the writ filed presents no triable issue of fact and is based solely on the Administrative Record . . . ."

On July 18, 2003, the trial court filed its statement of decision denying Dunn's writ petition and his motion for summary adjudication. The court found that Dunn had failed to meet his initial burden of proof on his summary adjudication motion, and that substantial evidence supported the County's findings and its decision to deny Dunn's application for a subdivision of his property. The County thereafter moved for judgment on the pleadings on the causes of action alleged in Dunn's complaint for damages. The County contended, among other things, that Dunn's constitutional claims failed as a matter of law in light of the court's denial of the writ petition, that Dunn had failed to state a claim for a physical taking, and that his claim for a regulatory taking was not ripe for review because he had not yet sought a final determination from the County regarding the extent of development that will be allowed on his property. The court granted the County's motion on January 30, 2004, finding that "since there can be no possible physical taking of property under the facts alleged in the complaint, and . . . all remaining causes of action are not ripe for adjudication, the motion must be granted."

## DISCUSSION

### I. *Administrative Mandamus*

#### A. *Standard of Review*

"Because this matter came to the trial court on a petition for a writ ofmandate under Code of Civil Procedure section 1094.5, that court was

required to determine whether substantial evidence supported the [County's] findings and whether those findings supported its decision. [Citation.] Our role is identical to that of the trial court. [Citations.] In determining whether substantial evidence supports the [County's] decision, we look to the 'whole' administrative record and consider all relevant evidence, including that evidence which detracts from the decision. Although this task involves some weighing to fairly estimate the worth of the evidence, that limited weighing does not constitute independent review where the court substitutes its own findings and inferences for that of the [County]. Rather, it is for the [County] to weigh the preponderance of conflicting evidence, as we may reverse its decision only if, based on the evidence before it, a reasonable person could not have reached the conclusion reached by it. [Citations.]" (*Kirkorowicz v. California Coastal Com.* (2000) 83 Cal.App.4th 980, 986 [100 Cal.Rptr.2d 124].)

In this appeal, we are also asked to review the County's interpretation of the Coastal Act, as manifested in the regulations contained in the County's LCP. Although the interpretation of a statute's legal meaning and effect are "questions lying within the constitutional domain of the courts" (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11 [78 Cal.Rptr.2d 1, 960 P.2d 1031]), we generally defer to an agency's interpretation where the agency "possess[es] special familiarity with satellite legal and regulatory issues" (*ibid.*; see also *Bolsa Chica Land Trust v. Superior Court* (1999) 71 Cal.App.4th 493, 504 [83 Cal.Rptr.2d 850]). Therefore, while we exercise our independent judgment in reviewing the County's interpretation of the Coastal Act, we exercise that judgment " ' "giving *deference* to the determination of the agency *appropriate* to the circumstances of the agency action." [Citation.]' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 219 [130 Cal.Rptr.2d 564].) "To summarize, we review the [County's] factual determinations for substantial evidence. [Citation.] We independently review the [County's] interpretation of [the Coastal Act], according that interpretation due deference. [Citation.]" (*Id.*, at p. 220.) The County's interpretation in this regard, as manifested in the LCP, is entitled to great weight because the LCP was certified by the Commission. (*Bolsa Chica, supra*, at p. 513.)

Dunn contends that the substantial evidence standard of review does not apply to his appeal because all of his assignments of error involve questions of law on undisputed facts. (See, e.g., *Lomeli v. Department of Corrections* (2003) 108 Cal.App.4th 788, 794 [134 Cal.Rptr.2d 179].) According to Dunn, we are therefore compelled to disregard the administrative record in favor of

the purportedly undisputed material "facts" identified in the separate statement he filed in support of his motion for summary adjudication.

We are not persuaded. As we explain, virtually all of Dunn's challenges of the County's decision to deny his subdivision application directly implicate factual disputes that were decided against him in the administrative proceedings. To the extent Dunn challenges the County's interpretation of the Coastal Act as provided in its regulations, he either mischaracterizes the County's interpretation, or fails to credit case law demonstrating that those interpretations are consistent with the statute's purpose.

### B. *Summary Adjudication*

In the trial court, Dunn filed a motion for summary adjudication of his writ petition pursuant to Code of Civil Procedure section 437c, subdivision (f). Motions for summary adjudication are procedurally identical to motions for summary judgment (*id.*, § 437c, subd. (f)(2)), and our review of rulings on those motions is de novo (*Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 464 [33 Cal.Rptr.3d 713]). Summary adjudication is warranted only if the motion completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty. (Code Civ. Proc., § 437c, subd. (f)(1).) The motion shall be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence . . . ." (*Id.*, subd. (c).) The papers filed in support of the motion "shall include a separate statement setting forth plainly and concisely all material facts which the moving party contends are undisputed." (*Id.*, subd. (b)(1).)

In support of his motion, Dunn filed a separate statement identifying 155 purportedly undisputed "facts" that he contended were dispositive of both the writ petition and his constitutional claims, most of which challenged the sufficiency of the evidence supporting the County's findings. The County opposed the motion on the ground that all of the findings necessary to its decision were supported by substantial evidence in the administrative record. The County specifically argued "that the facts in the record show at least a disputed issue that protected wetlands are present on the property, and so summary adjudication . . . cannot be granted to Plaintiff." In its separate statement, the County objected to many of Dunn's assigned facts as improper

conclusions of law, admitted others, and identified 11 additional facts and submitted "that there is at least a triable issue of fact as to each, as shown by the evidence in the record cited, which evidence also constitutes substantial evidence in the record to support the Board findings for denial[.]"

The trial court denied Dunn's motion, explaining that "[t]o the extent [Dunn's] motion was intended just to be a motion for summary adjudication, it was largely improper. The 'issues' identified by the motion . . . largely did not dispose of any cause of action, defense, damage claim, or duty issue . . . . The identified issues were, rather, components of [Dunn's] larger claim of entitlement to judgment on [his] petition for writ of mandate [pursuant to section 1094], which could have been (and was) sought without the use of any filing under CCP § 437c. [¶] Further, in finding that there existed substantial evidence to support the County's findings, the Court has necessarily found the existence of a triable issue of material fact as to whether Areas A and B were legally protected wetlands. . . . [¶] The Court is not bound to determine the existence of triable issues of material fact solely by reference to that evidence identified by [the County] in its response to the separate statement. The Court also notes that additional triable issues may exist, but are not specifically identified *because the basis for denial of the motion is [Dunn's] failure to meet his burden of proof.*" (Italics added.)

Although we are not bound by the trial court's reasoning in reviewing the denial of Dunn's motion for summary adjudication (*Hartline v. Kaiser Foundation Hospitals, supra*, 132 Cal.App.4th at p. 465), we find the court's reasoning persuasive. The trial court had the discretion to consider evidence not referenced in Dunn's separate statement (*Zimmerman, Rosenfeld, Gersh & Leeds v. Larson* (2005) 131 Cal.App.4th 1466, 1478 [33 Cal.Rptr.3d 111]), and we discern no basis for concluding that the court did not properly exercise that discretion in denying Dunn's motion. " ' " '[S]ummary judgment should not be based on tacit admissions or fragmentary and equivocal concessions, which are contradicted by other credible evidence.' [Citations.]" ' " (*Leep v. American Ship Management* (2005) 126 Cal.App.4th 1028, 1039 [24 Cal.Rptr.3d 463].)

Dunn nevertheless contends that in reviewing the denial of his summary adjudication motion, we must limit our review of the record to that evidence identified in his separate statement which the County either did not dispute, or to which objections were made and sustained. He also argues that we are compelled to accept that evidence as undisputed to the extent the County failed to expressly dispute it in its separate statement. In response, the County asserts that summary adjudication was procedurally inappropriate in this case because the material facts *were* disputed in the administrative proceedings,

and the court's role in reviewing those findings is limited to determining whether they were supported by substantial evidence in the administrative record. Dunn replies that the County waived any right to challenge the motion on procedural grounds by formally opposing it, and that any such challenge should fail because there is no express limitation on the application of the summary adjudication procedure to administrative mandamus proceedings.

We do not disagree with the proposition that summary adjudication or summary judgment may be granted in mandamus proceedings where evidence outside of the administrative record disposes of the petition as a matter of law. (See, e.g., *Stanton v. Dumke* (1966) 64 Cal.2d 199, 207 [49 Cal.Rptr. 380, 411 P.2d 108] [summary judgment granted in administrative mandamus proceeding on showing that the petition was moot]; *California Rifle & Pistol Assn. v. City of West Hollywood* (1998) 66 Cal.App.4th 1302, 1309 [78 Cal.Rptr.2d 591] [summary judgment granted in favor of the defendant city in mandamus proceeding challenging gun control ordinance on grounds of preemption, equal protection, and due process].) We also recognize that there is no express limitation on its use in administrative mandamus proceedings. Its use in this context is, nevertheless, limited by practical considerations.

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) That purpose is effected by providing for the admission of dispositive evidence, in the form of "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (Code Civ. Proc., § 437c, subd. (b)(1).) Where, as here, the court is called upon to evaluate the sufficiency of the evidence to support an agency's decision, review is generally limited to the evidence contained in the administrative record. (*Kirkorowicz v. California Coastal Com., supra*, 83 Cal.App.4th at p. 986.) Because the court's review is limited to the evidence which is already before the court, and the court must review all of that evidence, the summary adjudication procedure contemplated by Code of Civil Procedure section 437c is effectively unavailable for claims that an agency's decision is not supported by the evidence.

Dunn also challenges the County's decision on the ground that the County failed to proceed "in the manner required by law" as contemplated by Code of Civil Procedure section 1094.5, subdivision (b). He correctly notes that courts are not confined by the substantial evidence standard of review when reviewing questions of law on undisputed facts. (See, e.g., *Lomeli v.*

*Department of Corrections, supra,* 108 Cal.App.4th at p. 794.) An agency's application of a legal standard to particular *disputed* facts, however, presents a "mixed" question that is subject to review as a question of fact. (*Holmes v. Kizer* (1992) 11 Cal.App.4th 395, 400–401 [13 Cal.Rptr.2d 746]; see also 9 Witkin, Cal. Procedure (4th ed. 1997) Administrative Proceedings, § 113, p. 1158.) As we will explain, the facts underlying Dunn's claims are undisputed. Moreover, Dunn does not purport to base any of his claims on evidence outside of the administrative record.

Under the circumstances, the motion for judgment provided by Code of Civil Procedure section 1094 is the proper, and exclusive, procedural means for seeking a streamlined review of an agency's decision. That statute provides in pertinent part that "[i]f a petition for a writ of mandate . . . presents no triable issue of fact or is based solely on an administrative record, the matter may be determined by the court by noticed motion of any party for a judgment on the peremptory writ." Dunn moved for judgment pursuant to this section in the alternative. As will be shown, the trial court properly denied judgment on that ground because the County's decision to deny his application for a subdivision of his property is supported by substantial evidence in the administrative record, and there is no indication that the County failed to proceed in the manner required by law in making that decision.

### C. *Wetlands Designation*

▆ Wetlands are defined in the Coastal Act as "lands within the coastal zone which may be covered periodically or permanently with shallow water and include saltwater marshes, freshwater marshes, open or closed brackish water marshes, swamps, mudflats, and fens." (§ 30121.) In applying that definition, the County, under regulations certified by the Commission, uses the "Cowardin" system of classification. "For purposes of this classification, wetlands must have *one or more* of the following three attributes: (1) at least periodically, the land supports predominantly hydrophytes[3]; (2) the substrate[4] is predominantly undrained hydric soil; and (3) the substrate is nonsoil and is saturated with water or covered by shallow water at some time during the growing season of each year." (Interpretive Guideline, p. 79, appen. D, italics added; see also *Kirkorowicz v. California Coastal Com., supra,* 83 Cal.App.4th at p. 988.) ▆ In evaluating whether property is entitled to protection as a wetland under the Coastal Act, " ' "[t]he courts are enjoined to

---

[3] A hydrophyte is "a plant growing in water or in soil too waterlogged for most plants to survive." (Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 568.)

[4] The substrate, or substratum, is the "layer beneath the surface soil." (Merriam-Webster's Collegiate Dict., *supra,* at p. 1174.)

construe the statute liberally in light of its beneficial purposes. [Citation.] The highest priority must be given to environmental consideration in interpreting the statute [citation]." ' [Citation.]" (*Bolsa Chica Land Trust v. Superior Court, supra,* 71 Cal.App.4th at p. 506.)

██ In challenging the County's decision on the ground that it failed to proceed "in the manner required by law," Dunn primarily contends the County misinterpreted its regulations and the Coastal Act by designating areas on his property as wetlands even though those areas "do not function and have no value" as wetlands. Notwithstanding his attempt to frame this contention as presenting a question of law on undisputed facts, his arguments necessarily implicate the evidence the County relied on in reaching that decision. Moreover, Dunn's characterization of that evidence is one-sided. Every expert who evaluated the property, including Dunn's own biological consultant, recognized that Areas A and B possessed all three of the Cowardin wetland factors. The presence of only one of those factors may be sufficient to warrant a wetland designation. (Interpretive Guideline, p. 79, appen. D [wetland classification applies where land has "one or more" of the three Cowardin attributes]; see also *Kirkorowicz v. California Coastal Com., supra,* 83 Cal.App.4th at p. 990 ["evidence that hydrophytes exist on a property to a degree permitting jurisdictional wetland determination renders unnecessary any additional evidence of wetland hydrology or hydric soils"].)

Contrary to Dunn's contention, the County does not "mechanically" apply the designation when only one of the Cowardin factors is present. The LCP provides that "[i]n order to ensure that wetland protection standards are applied equitably to affected property owners, wetlands which have only one of the defining three characteristics, especially those defined only by seasonal ponding, require careful review to ensure that highly disturbed areas with artificially compacted soils which do not have true wetland characteristics are not mistakenly identified as wetlands."[5]

██ Notwithstanding the undisputed evidence that the subject areas on Dunn's property possess all three of the Cowardin wetland factors, Dunn contends there must be some *other* evidence that those areas "function" and "have value" as wetlands. But that contention begs the question whether such evidence exists, and a review of the record demonstrates that it does. For example, one of the biologists who surveyed the property noted that "[w]ild-life species, particularly native birds and mammals[,] are likely to take

---

[5] Dunn notes that the Commission expressly refers to wetlands as lands "transitional between terrestrial and aquatic systems," while the County does not. (Interpretive Guideline, pp. 78–79, appen. D.) Aside from the fact that the Commission effectively sanctioned the County's definition by certifying the LCP, the Cowardin factors are the objective proof that land is in the "transitional" state contemplated by the Commission's definition.

advantage of the seasonally ponded water contained in the freshwater marsh that occupies a portion of proposed Parcel 1. The wetland is of sufficient size to support breeding populations of Pacific chorus frog and Western toad. Wetland bird species are expected to use the pool for foraging on a seasonal basis, and the site's proximity to the coast and the western arroyo enhances the wetland's functional value to area wildlife. The arroyo along the western portion of the project site provides a conduit for wildlife movement which may also visit the onsite pond while foraging." Another survey indicated that the property contains 22 wetland indicator species that are considered valuable to wetland ecosystems. Pacific tree frogs, killdeer, and spotted sandpiper, all of which are associated with wetland areas, were observed on the property, which was deemed of sufficient size to support their breeding populations.

In spite of this undisputed evidence of the wetlands' function and value, Dunn contends that only wetlands of a higher quality than those on his property are entitled to protection. That argument has already been rejected: "[T]he Coastal Act by its definition of wetland (§ 30121) does not distinguish between wetlands according to their quality. Indeed, section 30233 limits development in all wetlands without reference to their quality." (*Kirkorowicz v. California Coastal Com., supra*, 83 Cal.App.4th at p. 994.) The logic inherent in this conclusion is that "the failure to protect the low-quality wetlands would encourage developers to find threats and hazards to all wetlands located in economically inconvenient locations." (*Id.*, at p. 995.) Because substantial evidence in the record supports the County's findings that Areas A and B on Dunn's property are legally protected wetlands, and the County did not misinterpret its own regulations or state law in making those findings, Dunn was not entitled to issuance of the writ on the grounds that the County's decision was deficient in either regard.[6]

## D. *ESHA Designation*

Under the Coastal Act, an ESHA is "any area in which plant or animal life or their habitats are either rare or especially valuable because of their special nature or role in an ecosystem and which could be easily disturbed or degraded by human activities and developments." (§ 30107.5.) ESHA's "shall be protected against any significant disruption of habitat values, and only uses dependent on those resources shall be allowed within those areas." (§ 30240, subd. (a).) The County's LCP, which includes wetlands

---

[6] In the trial court, Dunn argued that Areas A and B should not be designated as wetlands because they were artificially created. The trial court rejected that contention on the ground that the Coastal Act expressly protects "natural *and artificial* resources" within the coastal environment. (§ 30001.5, subd. (a), italics added.) The court also rejected Dunn's argument that only wetlands in existence as of the enactment of the Coastal Act in 1972 were subject to protection. Dunn has not challenged either of these conclusions on appeal.

in its definition of the types of habitats that qualify as ESHA's, also lists criteria including "[u]nique, rare, or fragile communities which should be preserved to ensure their survival in the future" and "[a]reas that are important because of their biological productivity such as wetlands . . . ."

Dunn challenges the County's finding that the wetlands on his property are ESHA's. First, he claims the County "admitted" those areas were not ESHA's by failing to specifically dispute the facts he identified as dispositive of that issue in his separate statement. As we have already explained, the County had no duty to dispute any of those facts because Dunn failed to meet his initial burden on the motion. Dunn also fails to acknowledge that the County *did* dispute that claim in the additional facts it submitted in opposing the motion. He also contends the County erred in "automatically" designating the wetlands as ESHA's, notwithstanding that the LCP, which was approved by the Commission, expressly treats all wetlands as ESHA's.

We have already referred to the evidence demonstrating that the particular wetlands at issue here play a valuable role in the ecosystem. In addition to that evidence, the EIR prepared in connection with Dunn's application also noted that a biologist who evaluated the site in 1998 "indicates the wetland provides habitat value for bird species, and [he] observed killdeer and spotted sandpiper feeding. . . . [B]lack phoebe frequently use[] a fence post located in the center of the wetland as a foraging perch, based on an accumulation of scat." The County's LCP also explains that all wetlands are entitled to independent protection as ESHA's because they "are extremely fertile and productive environments. They act as nurseries for many aquatic species and serve as feeding and nesting areas for many waterfowl including rare and endangered species." The Commission also generally defines wetlands as ESHA's, and its guidelines recognize that " '[o]f all the environmentally sensitive habitat areas mentioned specifically in the Coastal Act, wetlands and estuaries are afforded the most stringent protection. . . .' " (*Bolsa Chica Land Trust v. Superior Court, supra,* 71 Cal.App.4th at p. 515.)

■ Nothing in Dunn's briefs demonstrates that the wetlands on his property are not entitled to this heightened protection. His argument that the quality of the wetlands somehow diminishes their importance as ESHA's has already been rejected: "[U]nder the statutory scheme, ESHA's, whether they are pristine and growing or fouled and threatened, receive uniform treatment and protection. [Citation.]" (*Bolsa Chica Land Trust v. Superior Court, supra,* 71 Cal.App.4th at p. 508.) Although Dunn contends that viability may play a legitimate role in determining whether a particular habitat qualifies as an

ESHA (*ibid.*),[7] there is substantial evidence of viability here. To the extent Dunn complains that the County's regulations are more restrictive than the Commission's in determining ESHA status, the County has the discretion to be more restrictive to the extent its regulations are consistent with legislative intent. (*Conway v. City of Imperial Beach* (1997) 52 Cal.App.4th 78, 87 [60 Cal.Rptr.2d 402].)[8]

### E. *Mitigation*

Dunn next contends the County erred in failing to consider mitigation as an alternative to denying his subdivision application. This claim is premised on section 21159.26[9] of the California Environmental Quality Act (CEQA), which does not apply here because the County did not certify the EIR pursuant to section 21080, subdivision (b)(5). To the extent Dunn otherwise argues that mitigation should have been considered, the Coastal Act plainly provides that residential development is not permitted in wetlands under any circumstances. (§ 30233, subd. (a); *Bolsa Chica Land Trust v. Superior Court, supra,* 71 Cal.App.4th at p. 511.)

### F. *Buffer*

Dunn also contends the County erred in imposing a 100-foot setback, or "buffer," around the wetlands on his property. The buffer was imposed

---

[7] The merit of this contention is not clear. Although the court in *Bolsa Chica* unequivocally stated, "[w]e do not doubt that in deciding whether a particular area is an ESHA within the meaning of section 30107.5, [the] Commission may consider, among other matters, its viability" (*Bolsa Chica Land Trust v. Superior Court, supra,* at p. 508), the cited authority, *Sierra Club v. California Coastal Com.* (1993) 12 Cal.App.4th 602, 614–615 [15 Cal.Rptr.2d 779], does not directly support that proposition. Rather, the cited portion of that opinion merely recognized that the court had not been called upon to decide whether "pygmy-type" areas, which possessed pygmy-type vegetation or soils but did not qualify as a "pygmy forest," were entitled to ESHA protections. (*Sierra Club, supra,* at pp. 614–615.) Moreover, in paraphrasing *Bolsa Chica,* the court in *Kirkorowicz* interpreted that decision as "[d]oubting that the Commission in deciding whether a particular area is an ESHA within the meaning of section 30107.5 may consider its viability . . . ." (*Kirkorowicz v. California Coastal Com., supra,* 83 Cal.App.4th at p. 995, italics added.) Because there is no evidence indicating that the wetlands on Dunn's property are not viable, we have no occasion to weigh in on this apparent dispute.

[8] Dunn argues that the County engages in "convolution" by arguing as it did below that the ESHA designation is not essential to its findings. The County's argument in this regard merely recognizes that the wetland provisions of the Coastal Act control the regulation of wetlands that are also ESHA's to the extent those regulations conflict with ESHA provisions. (*Bolsa Chica Land Trust v. Superior Court, supra,* 71 Cal.App.4th at p. 515.)

[9] That section provides that "[w]ith respect to a project that includes a housing development, a public agency may not reduce the proposed number of housing units as a mitigation measure or project alternative for a particular significant effect on the environment if it determines that there is another feasible specific mitigation measure or project alternative that would provide a comparable level of mitigation. This section does not affect any other requirement regarding the residential density of that project." (§ 21159.26.)

pursuant to LCP policy 9-9, which provides that "[a] buffer strip, a minimum of 100 feet in width, shall be maintained in natural condition along the periphery of all wetlands. No permanent structures shall be permitted within the wetland or buffer area except structures of a minor nature, i.e., fences, or structures necessary to support [light recreational uses]." Dunn argues that this policy applies only to wetlands that are also ESHA's. We have concluded, however, that substantial evidence supports the County's finding that the wetlands on Dunn's property are ESHA's as well.

To the extent Dunn contends that the LCP does not expressly refer to a "uniform" buffer or the prohibition of any building within the buffer, a logical reading indicates that both conclusions are appropriate. The fact that there are preexisting structures within the buffer is irrelevant. Moreover, Dunn ignores the trial court's conclusion, which we adopt, that he failed to demonstrate that a lesser buffer would have been adequate to protect the wetlands.

### G. *Findings Regarding Proposed Septic System*

Dunn's final contention in challenging the denial of his writ petition is that substantial evidence does not support the County's finding that the proposed septic system to be installed on proposed parcel 1 would violate 100-foot setbacks mandated by the Regional Water Quality Board. Dunn's reason for raising this issue is unclear, because the trial court agreed with him on this point. To the extent he intended to otherwise challenge the application of a 100-foot setback around the wetlands, we have already concluded that substantial evidence supports the imposition of that setback pursuant to the County's LCP policy 9-9.

### II. *Motion for Judgment on the Pleadings*

The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer: We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein. We may also consider matters subject to judicial notice. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any theory. (*DiPirro v. American Isuzu Motors, Inc.* (2004) 119 Cal.App.4th 966, 972 [14 Cal.Rptr.3d 787].)

The trial court granted judgment on the pleadings in favor of the County on all of the causes of action raised in Dunn's complaint for damages. The court granted judgment on the causes of action for a physical taking on the ground that Dunn could not state such a claim as a matter of law, and on the regulatory takings claims on the ground that they were not ripe for

adjudication.[10] The remaining causes of action for equal protection, substantive due process, and civil rights violations were also deemed unripe on the theory that they were derivative of the regulatory takings claims.

Judgment on the physical takings claims was plainly correct because Dunn did not and cannot allege that the County took physical possession of his property or otherwise occupied it. (See *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency* (2002) 535 U.S. 302, 322 [152 L.Ed.2d 517, 122 S.Ct. 1465].) We reject, however, the court's conclusion that Dunn's regulatory takings claims are not ripe for adjudication.

■ The takings clause of the Fifth Amendment of the United States Constitution, which applies to the states through the Fourteenth Amendment, prohibits the government from taking private property without just compensation. "Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action. [Citation.]" (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606, 617 [150 L.Ed.2d 592, 121 S.Ct. 2448] (*Palazzolo*).)

■ A takings claim challenging the application of regulations to particular property must be ripe for consideration. Such a claim is not ripe until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." (*Williamson Planning Comm'n v. Hamilton Bank* (1985) 473 U.S. 172, 186 [87 L.Ed.2d 126, 105 S.Ct. 3108].) "A final decision by the responsible state agency informs the constitutional determination whether a regulation has deprived a landowner of 'all economically beneficial use' of the property [citation], or defeated the reasonable investment-backed expectations of the landowner to the extent that a taking has occurred [citation]. These matters cannot be resolved in definitive terms until a court knows 'the extent of permitted development' on the land in question. [Citation.]" (*Palazzolo, supra*, 533 U.S. at p. 618.) The primary question to be answered in resolving this issue is whether the landowner "obtained a final decision from the [agency] determining the permitted use for the land." (*Ibid.*)

■ Applying these principles, the trial court concluded that Dunn's takings claims were not ripe because he had failed to apply for a permit to develop a single-family residence on his property. The County, however, has

---

[10] Dunn alleges takings claims under the state and federal Constitutions. Because state takings law is coextensive with federal law (see *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 9, fn. 4 [32 Cal.Rptr.2d 244, 876 P.2d 1043]), the analysis of the ripeness issue is the same.

repeatedly indicated that it will allow Dunn to build a residence on his property. It is also apparent that the County has indicated it does not have the authority to subdivide the property into two lots, and the County is aware that only one viable building site exists as a result of its decision to deny that subdivision. "While a landowner must give a land-use authority an opportunity to exercise its discretion, once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened. The case is quite unlike those upon which respondents place principal reliance, which arose when an owner challenged a land-use authority's denial of a substantial project, leaving doubt whether a more modest submission or an application for a variance would be accepted." (*Palazzolo, supra,* 533 U.S. at p. 620.) Because the County has made it clear that its wetland and ESHA regulations effectively limit the development of Dunn's property to one residence, his takings claim is ripe for adjudication even though he has not sought permission to build that residence.[11]

Our conclusion is compelled by the United States Supreme Court's decision in *Palazzolo.* The landowner in that case pursued a takings claim after the Rhode Island Coastal Resources Management Council (Council) denied his applications to develop the area containing wetlands on his 18-acre property, but before he made any attempt to develop that portion of the property that did not contain wetlands. Even though the Council informed the landowner "that they would have allowed petitioner to build a residence on the upland parcel," the lower courts concluded that the takings claim was not ripe for adjudication. (*Palazzolo, supra,* 533 U.S. at p. 622.)

 The United States Supreme Court reversed, reasoning that "[r]ipeness doctrine does not require a landowner to submit applications for their own sake. Petitioner is required to explore development opportunities on his upland parcel only *if there is uncertainty as to the land's permitted use.*" (*Palazzolo, supra,* 533 U.S. at p. 622, italics added.) The court further concluded that "*Williamson County* and our other ripeness decisions do not impose further obligations on petitioner, for the limitations the wetland regulations imposed were clear from the Council's denial of his applications, and there is no indication that any use involving any substantial structures or improvements would have been allowed. Where the state agency charged with enforcing a challenged land-use regulation entertains an application from an owner and its denial of the application makes clear the extent of development permitted, and neither the agency nor a reviewing state court has cited noncompliance with reasonable state-law exhaustion or pre-permit processes

---

[11] There is no dispute that the subdivision of property constitutes a form of "development" under the Coastal Act. (§ 30106; *Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 387 [62 Cal.Rptr.2d 803].)

[citation], federal ripeness rules do not require the submission of further and futile applications . . . ." (*Palazzolo, supra*, at pp. 625–626.)

In concluding that Dunn's regulatory takings claims were not ripe, the trial court reasoned that "[u]ncertainty exists with respect to the scope of any development project which would be allowed on the remaining existing 'building envelope,' whether the required setbacks and wetlands protections would allow for any alternative configuration of the lot(s) and building envelope(s), whether the County might entertain zoning or other regulation variances which would enable plaintiff to utilize the parcel to the fullest extent possible, or whether the County would allow some sort of development which involved minor intrusions into the buffer zone areas, in order to avoid a potential takings claim" pursuant to section 30010. None of these stated grounds undermines the unequivocal and final nature of the County's decision denying the lot split. The County has made clear that only one viable building site remains after the application of its regulations, and that Dunn will be allowed to build a single-family residence on that site. It is also undisputed that no alternative configuration of the lots would solve the problem, and that the application of the County's wetland and ESHA regulations will have no effect on Dunn's ability to build one residence on the building site that is not affected by those regulations. Moreover, the County has indicated that it will not be necessary to allow intrusions into the buffer area because there is ample room for Dunn to build a residence on the remaining building site. Because the County has stated that it will not allow Dunn to subdivide his property, and that it will allow him to build only one residence on the remaining building site, the permissible use of the property is known to a reasonable degree of certainty. Accordingly, the takings claims are ripe for review.

Because Dunn's regulatory takings claims are ripe for adjudication, the trial court erred in granting judgment on those claims in favor of the County. By extension, the court also erred in granting judgment on the remaining claims for substantive due process, equal protection, and civil rights violations.[12] We therefore reverse the grant of judgment on those claims and remand for further proceedings.

---

[12] Because we reverse the judgment in favor of the County on the substantive due process claim, we need not address Dunn's contention that the trial court erred in deeming the claim derivative of the regulatory takings claims. (See *Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528 [161 L.Ed.2d 876,125 S.Ct. 2074, 2082–2083] [recognizing that the determination whether a regulation "substantially advances" a legitimate government interest for purposes of substantive due process is separate and distinct from the determination whether the application of a regulation effects a taking].)

## DISPOSITION

Judgment in favor of the County on Dunn's regulatory takings claims and his claims for violations of his substantive due process, equal protection, and civil rights is reversed. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.

Petitions for a rehearing were denied February 23, 2006, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 12, 2006, S141652. Werdegar, J., did not participate therein.