Filed 10/23/14  Zeiny v. Good Samaritan Hospital CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AL ZEINY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>GOOD SAMARITAN HOSPITAL,<br><br>    Defendant and Respondent. | H039977<br>(Santa Clara County<br>Super. Ct. No. 1-12-CV231180) |

Plaintiff Al Zeiny, proceeding in propria persona, appeals from a judgment on the pleadings in favor of defendant Good Samaritan Hospital (Good Samaritan) on his medical malpractice claim.  We reverse and remand.

I.    **BACKGROUND**

   *A*.    *Factual Background*[1]

Zeiny, originally from Egypt, lives and works in the United States designing nuclear power plants.  Since at least September 2009, Zeiny has been under the care of a psychiatrist, Duke Fisher, M.D., for depression.  Dr. Fischer's progress notes from an October 19, 2011 session with Zeiny describe him as "anxious," "disorganized,"

---

[1] The statement of facts is based on the allegations in the operative first amended complaint and its four exhibits.  We " 'accept as true both facts alleged in the text of the complaint and facts appearing in exhibits attached to it.  If the facts appearing in the attached exhibit contradict those expressly pleaded, those in the exhibit are given precedence.' " (*Sarale v. Pacific Gas & Electric Co*. (2010) 189 Cal.App.4th 225, 245.)

"agitated," and "confused," and state that Zeiny was experiencing "paranoid ideation in terms of 'they are watching me.' "

Zeiny attempted suicide the following day because of what he characterizes as "abuse [by] CIA renegade individuals/unit," which included "conspiring with his employer to establish pretext to terminate his employment." Zeiny was hospitalized at Good Samaritan's Mission Oaks campus following the suicide attempt. Anita Hirsch, M.D., was Zeiny's treating psychiatrist at Good Samaritan.

The complaint alleges that Dr. Hirsch offered Zeiny a "deal" on behalf of the renegade CIA agents, under which he would receive one year of disability benefits in exchange for leaving the country. Dr. Hirsch also allegedly told Zeiny he should be worried about newspapers writing about him designing nuclear power plants while in a state of mental illness.

During Zeiny's stay at Good Samaritan, various nurses and staff members, including a nurse named John, asked plaintiff questions about the renegade CIA agents. The questioning caused Zeiny fear and anxiety.

When Zeiny's mandatory 72-hour hold expired on Sunday, October 23, 2011, Dr. Hirsch recommended that he extend his stay in the hospital. Dr. Hirsch advised Zeiny she would write a mandatory admission to hold him if he did not agree to voluntary admission. Zeiny agreed to remain in the hospital and signed a voluntary admission form. However, on Tuesday, October 25, 2011, Zeiny left the hospital against medical advice. He did so because he believed the questions about the renegade CIA agents were causing his condition to deteriorate.

Dr. Hirsch's discharge notes stated that, at the time of discharge, Zeiny was "euthymic"[2] and "[t]here was no evidence of any paranoid psychosis."

Zeiny continued to see Dr. Fischer after being discharged from Good Samaritan. Dr. Fischer's progress notes from a session held the day after Zeiny was discharged from the hospital describe him as "extremely confused," "agitated," and "requir[ing] considerable redirection within the session." Dr. Fischer's progress notes indicate that Zeiny remained paranoid, particularly about being followed by the FBI, in the months following his suicide attempt and hospitalization.

Zeiny attempted suicide again on August 13, 2012.

### B. *Procedural Background*

Shortly after his second suicide attempt, Zeiny sued Good Samaritan and Dr. Hirsch for medical malpractice. Attached to the operative first amended complaint, filed on October 23, 2012, were four exhibits, including Dr. Hirsch's discharge notes and Dr. Fischer's progress notes.

Dr. Hirsch demurred to the first amended complaint, arguing that Zeiny failed to adequately allege the breach and causation elements of his medical malpractice claim. Specifically, she argued that the facts in the complaint and its exhibits established that Zeiny had a preexisting psychiatric disorder, she took reasonable steps to address that disorder, Zeiny chose to leave the hospital against her advice, and his existing disorder progressed naturally thereafter. The trial court sustained Dr. Hirsch's demurrer without leave to amend on the theory that she owed Zeiny no duty. Zeiny does not appeal that ruling.

---

[2] Euthymic means "pertaining to a normal mood in which the range of emotions is neither depressed nor highly elevated." (The Free Dictionary <http://medical-dictionary.thefreedictionary.com> [as of Oct. 23, 2014].)

Good Samaritan then moved for judgment on the pleadings, arguing that because Zeiny's allegations had "been found inadequate to state of a cause of action against Dr. Hirsch, they must also fail . . . as to [Good Samaritan]." In opposition, Zeiny explained "[t]he wrong doing [*sic*] in this case is caused by the interference of the CIA renegade agents with Plaintiff's medical treatment in [Good Samaritan]." In support of that theory, Zeiny attached to his opposition a copy of a complaint he filed in a suit against the CIA in federal court. That complaint detailed and sought damages for alleged abuse by renegade CIA agents. Among other things, the federal complaint alleged Zeiny's second suicide attempt was "a result of CIA atrocious acts." In its reply brief, Good Samaritan relied on allegations in the federal complaint to argue that Zeiny had admitted the CIA, not Good Samaritan, caused his alleged injuries.

The trial court took judicial notice of Zeiny's federal complaint and granted Good Samaritan's motion for judgment on the pleadings without leave to amend. At a June 13, 2013 hearing, the court explained the basis for its decision as follows: Zeiny "alleged that other people[, the renegade CIA agents,] have done something wrong, not Good Samaritan Hospital." The trial court's written order, dated July 3, 2013, further reasoned that Zeiny had failed to allege causation in view of the statement in his opposition that "[t]he wrong doing [*sic*] in this case is caused by the interference of the CIA renegade agents with Plaintiff's medical treatment in [Good Samaritan]."

The court entered judgment in favor of Good Samaritan on July 29, 2013. Zeiny timely appealed.

## II. DISCUSSION

### A. *Standard of Review*

"The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer: We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein." (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281,

4

1298 (*Dunn*).)  Significantly, "we accept as true even improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove [the] factual allegations." (*Friends of Glendora v. City of Glendora* (2010) 182 Cal.App.4th 573, 576.)  We will not, however, credit the allegations in the complaint where they are contradicted by facts that either are subject to judicial notice or are evident from exhibits attached to the pleading.  (*Hill v. Roll Intern. Corp.* (2011) 195 Cal.App.4th 1295, 1300 (*Hill*).)

We review de novo whether a cause of action has been stated as a matter of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)  We do not review the validity of the trial court's reasoning, and therefore will affirm its ruling if it was correct on any theory.  (*Hill*, *supra*, 195 Cal.App.4th at p. 1300.)  Nor are we "limited to plaintiff[']s theory of recovery in testing the sufficiency of [his] complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory." (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103.)

### B.	*Zeiny Stated a Medical Malpractice Claim Against Good Samaritan*

"The elements of a cause of action for medical malpractice are:  (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage."  (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305 (*Johnson*).)  We consider whether Zeiny adequately pleaded each element of a medical malpractice cause of action in turn.

#### 1.	Duty

The first amended complaint alleged that Good Samaritan owed Zeiny a duty "to provide skillful management of his condition."  On appeal, Good Samaritan does not dispute that it owed Zeiny a duty.

Our Supreme Court held over a half-century ago that " '[a] private hospital owes its patients the duty of protection, and must exercise such reasonable care toward a

5

patient as his known condition may require. The measure of duty of a hospital is to exercise that degree of care, skill and diligence used by hospitals generally in that community, and required by the express or implied contract of the undertaking. A hospital is liable for want of ordinary care, whether from incompetency of a nurse or failure in duty by a fully qualified nurse.' " (*Wood v. Samaritan Institution* (1945) 26 Cal.2d 847, 851-852.)

Zeiny adequately alleged Good Samaritan owed him a duty to exercise reasonable care while he was its patient.

### 2. *Breach*

To state a medical malpractice claim, Zeiny must allege a breach of the duty described above, meaning that Good Samaritan failed to exercise the degree of care, skill, and diligence generally employed by hospitals in the community. "The standard of skill, knowledge and care prevailing in a medical community is ordinarily a matter within an expert's knowledge." (*Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 105 (*Jacoves*).) As such, expert testimony is required to establish whether the defendant breached the standard of care, except where "the negligence is obvious to a layperson." (*Johnson*, *supra*, 143 Cal.App.4th at p. 305.)

With respect to breach, Zeiny alleged that Good Samaritan nurses and staff questioned him about the renegade CIA agents.[3] Zeiny posits this questioning was not

---

[3] We need not consider Zeiny's allegations regarding Dr. Hirsch's conduct because Good Samaritan's liability is vicarious only. (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501 [a hospital's "liability for medical malpractice . . . must be based upon a theory of vicarious liability"].) "There can be no vicarious liability in a medical malpractice action without the underlying liability of the medical practitioner." (*Lathrop v. HealthCare Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1426.) Because the trial court dismissed the claim against Dr. Hirsch, and Zeiny does not appeal that dismissal, Good Samaritan cannot be held liable for her actions. (3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and Employment, § 167, p. 211 ["the (continued)

appropriate treatment and constituted a breach of the duty of care. While the alleged conduct strikes us as relatively innocuous, the treatment of a paranoid and suicidal patient is not a matter of common knowledge. (See *Jacoves*, *supra*, 9 Cal.App.4th at p. 106 ["[d]iagnosis, treatment and care of a schizophrenic and suicidal psychiatric patient, and the standard of care prevailing in the medical community for such patients, are not matters of common knowledge"].) As laymen, we are not qualified to conclude, as a matter of law, that questioning a psychiatric patient about the motives for a suicide attempt is always consistent with the standard of skill, knowledge, and care prevailing in the medical community. Accordingly, we conclude Zeiny adequately pleaded a breach.

Good Samaritan argues that Zeiny failed to allege a breach because the attachments to his complaint prove that no renegade CIA agents exist, except in his mind. Good Samaritan's argument apparently is premised on the allegations that hospital staff and nurses asked Zeiny about the renegade CIA agents *on behalf of those agents*. But those allegations constitute "deductions or conclusions of fact" regarding motivation, which we do not credit. (*Dunn*, *supra*, 135 Cal.App.4th at p. 1298.) Even if there are no renegade CIA agents, Zeiny's factual allegations--that hospital staff and nurses questioned him about such agents--are sufficient to plead a breach.

### 3. Causation

Zeiny also must allege a causal connection between the alleged questioning and his alleged injuries, which include mental and emotional injuries and "further deterioration to his mental health." He need not allege that the conduct of Good Samaritan staff and nurses were "the sole cause of" his injuries, but that they were "a *substantial factor* in causing them." (*Espinosa v. Little Co. of Mary Hospital* (1995) 31 Cal.App.4th 1304, 1321 (*Espinosa*).)

principal cannot be liable unless the agent is liable"].) Zeiny implicitly acknowledges this on appeal by focusing on the actions of other Good Samaritan staff and nurses.

7

In an effort to plead the requisite causal nexus, Zeiny alleged that questioning by hospital staff caused him to be "in a constant state of fear and anxiety in the hospital," made his condition "worse," and ultimately led to his second suicide attempt. Again, though the alleged conduct seems relatively benign, we "are not qualified from a medical standpoint to determine the effects of" that conduct. (*Barton v. Owen* (1977) 71 Cal.App.3d 484, 506.) Therefore, at this early stage, we must conclude that the allegations are sufficient to plead causation.

Good Samaritan argues that Dr. Hirsch's discharge notes refute Zeiny's allegations that his condition worsened while he was its patient. While Dr. Hirsch's discharge notes suggest Zeiny improved during his stay, Dr. Fischer's progress notes from the day after Zeiny was discharged state Zeiny was "extremely confused," "agitated," and "required considerable redirection within the session." Accordingly, the exhibits to the complaint do not conclusively establish whether the treatment Zeiny received at Good Samaritan caused his condition to worsen. Good Samaritan can determine in discovery whether Zeiny's contentions regarding his allegedly worsening condition have any merit, and when appropriate, bring a summary judgment motion.

Good Samaritan also contends that "judicial admissions" in Zeiny's federal complaint establish that the CIA, not the hospital or its staff, caused his alleged injuries. We disagree that the allegations in the federal complaint constitute judicial admissions in this action. " '[A] judicial admission is effective (i.e., conclusive) *only* in the particular case.' " (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 456.) Thus, any factual allegations made in the federal complaint constitute judicial admissions only in that action. Contrary to Good Samaritan's contention, that the trial court took judicial notice of the federal complaint does not change the analysis because doing so establishes only "the *existence* of the complaint, not . . . the *truth* of any of the allegations contained in it." (*Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 743, italics added.)

8

Nor is the statement in Zeiny's opposition to Good Samaritan's motion that "[t]he wrong doing [*sic*] in this case is caused by the interference of the CIA renegade agents with Plaintiff's medical treatment in [Good Samaritan]" fatal to his claim, as the trial court concluded. First, that statement is not a judicial admission. Only "allegations of fact" in pleadings--meaning " 'complaints, demurrers, answers, and cross-complaints' "--constitute judicial admissions. (*Myers v. Trendwest Resorts*, *Inc*. (2009) 178 Cal.App.4th 735, 746.) Zeiny's statement is not an allegation of fact, but a conclusion of law as to what caused the alleged wrongdoing. (*Stroud v. Tunzi* (2008) 160 Cal.App.4th 377, 384 ["judicial admissions involve facts, not legal theories or conclusions"].) Moreover, the statement was not contained in a pleading. Second, reading the complaint and opposition in their entirety, it is clear that Zeiny's theory is that both the renegade CIA agents and Good Samaritan contributed to his injuries. "Multiple or concurring causes . . . do not preclude recovery by plaintiff[]." (*Logacz v. Limansky* (1999) 71 Cal.App.4th 1149, 1159.) Zeiny need only allege that Good Samaritan was a substantial factor in bringing about his harm. (*Espinosa*, *supra*, 31 Cal.App.4th at p. 1321.) He did so.

### 4. *Damages*

Finally, Zeiny adequately alleged damages, including emotional pain and suffering during his stay at Good Samaritan.

### C. *Conclusion*

In reversing the order granting Good Samaritan's motion for judgment on the pleadings, we express no opinion about the ultimate merits of Zeiny's claim. We conclude only that--when his well-pleaded facts are accepted as true, as they must be at this early stage in the proceedings--he has alleged the elements of a medical malpractice cause of action. Many of the arguments Good Samaritan advances on appeal appear better suited for resolution on a motion for summary judgment or after trial, as they require expert testimony, factual analysis, or both.

9

## III. DISPOSITION

The judgment is reversed. The superior court is directed to vacate its order granting Good Samaritan's motion for judgment on the pleadings and to enter a new order denying that motion. Zeiny shall recover his appellate costs.

_____
                Premo, Acting P.J.

WE CONCUR:


_____
         Elia, J.


_____
         Mihara, J.