GIGLIOTTI, APPELLEE, *v.* THE NEW YORK, CHICAGO & ST. LOUIS RD. CO., APPELLANT.*

---

*Motion to certify the record overruled, December 31, 1958.

176

(No. 1417—Decided August 20, 1958.)

*Mr. Ray L. Miraldi,* for appellee.

*Mr. William G. Wickens* and *Mr. Frank J. Stack,* for appellant.

DOYLE, J.  Dominic Gigliotti instituted this action against the New York, Chicago & St. Louis Railroad Company (Nickel Plate Railroad) in the Municipal Court of the city of Lorain for injuries and damages received as the result of a collision between an automobile which he was driving and an engine of the railroad company, at a point where the railroad tracks crossed, at right angles, the public thoroughfare upon which he was driving.

Upon issues joined, trial was held, and, at the conclusion thereof, a jury verdict was returned in the sum of $2,000 in favor of the plaintiff.  A judgment in that amount was thereupon entered.  Motions of the defendant for judgment notwithstanding the verdict and for a new trial were overruled.  Appeal was then perfected to this court on questions of law.

The appellant railroad company claims error prejudicial to its rights "in the judgment * * * and proceedings of the lower court in the following respects":

"1. The court erred in overruling this defendant's several motions for a directed verdict.

"2. The court erred in permitting the plaintiff to amend his petition at the commencement of the trial and over the objection of the defendant by the insertion therein of an additional specification of negligence.

"3. The court erred in permitting the jury to view the scene of the accident, over the objection of this appellant.

"4. The court erred in refusing to declare a mistrial and withdraw a juror upon and after improper, prejudicial and inflammatory arguments to the jury by plaintiff's counsel.

"5. * * * misconduct by the attorney for the plaintiff, prejudicial to this appellant.

"6. * * * error in the court's charge to the jury, to which this appellant objected.

"7. The court erred in giving conflicting and irreconcilable charges of law to the jury.

"8. The verdict and judgment are contrary to law.

"9. The court erred in overruling the appellant's motion for judgment notwithstanding the verdict.

"10. The court erred in overruling this appellant's motion for a new trial.

"11. The court erred in committing other errors of law occurring at the trial and prejudicial to the rights of this appellant, whereby this appellant was deprived of a fair trial * * *.

"12. The verdict and judgment are contrary to the manifest weight of the evidence."

It is strenuously argued that there is a failure of proof of negligence of the railroad company proximately causing the accident; and, furthermore, it is urged that the evidence established negligence of the plaintiff which proximately caused, or at least proximately contributed to cause, the damages, as a matter of law. To these questions we now direct attention.

It appears that the plaintiff, after closing and cleaning a public tavern operated by him, commenced to drive his automobile into the city of Lorain for an early breakfast. The time was 4 a. m. in the night season. His travel was easterly on Lake Road toward a single-spur railroad crossing which serviced the Elyria waterworks plant, located adjacent to and on the north side of the highway. The plant was enclosed with a wire fence which extended to some 33 feet from the north edge of the pavement of the highway. The spur track crossed the highway at right angles, and, west of the crossing (the direction from which the plaintiff was traveling), the 30-foot highway was straight and level for a distance of approximately 2,000 feet.

The crossing was well known to the plaintiff, as he had for a period of 15 years driven over it at least twice a day, and he

knew the purpose which it served; but, according to his testimony, during all this time he had seen but one train cross into the waterworks yard in the daytime, and none at night, although the track was in regular use.

The evidence indicates that the plaintiff, with full knowledge of the crossing, was proceeding (according to his own testimony) at a speed of from 40 to 43 miles an hour; that, as he approached the tracks, at a distance of 75 feet, he first saw the engine near the north edge of the highway, or possibly "a foot or two on the highway"; and that he immediately applied his brakes, but was unable to stop before colliding with the front end of the engine.

The diesel locomotive, 40 feet in length, when leaving the waterworks premises, had fully stopped at the plant entrance, with its nose slightly beyond the fence enclosure, but short of the highway. At this point the engineer, after looking down the highway to the west a full 2,000 feet to an underpass, and seeing no traffic, started across the highway at a speed of from five to perhaps ten miles an hour. As the engine proceeded to the highway, the engineer then, for the first time, saw automobile lights approaching from the west. The plaintiff, after skidding his tires 60 feet on a dry pavement, then collided with the engine.

The court submitted the case to the jury on the following charges of negligence against the railroad company:

1. In failing "to post a watchman at the highway crossing of its spur track or warn approaching traffic at this unusually hazardous crossing."

2. "In that defendant failed to ring a bell or sound a whistle while said defendant's locomotive approached, entered and proceeded to traverse said highway crossing."

3. "In that defendant failed to keep a proper and reasonable lookout in front of said defendant's locomotive as it approached and started to traverse said highway crossing."

4. "In that defendant failed to sound a whistle at least 80 rods from the lake road crossing."

Under specification of negligence No. 1, above, it does not appear that any statute or order of the Public Utilities Commission of this state required a watchman or any other warning than that of the cross-buck sign (which was in proper place)

for the crossing in question; and, in the absence of such requirement, "there is *ordinarily* * * * no duty on a railroad to provide extrastatutory warnings at a grade crossing, where no order of the Public Utilities Commission has provided for such warnings, if a driver in the exercise of ordinary care should be able to avoid colliding with a train that is being operated over the crossing in compliance with statutory requirements. Stated another way, a railroad is under no duty to provide extrastatutory warnings at a grade crossing, where not required to do so by any order of the Public Utilities Commission, if there is no substantial risk that a driver in the exercise of ordinary care may be unable to avoid colliding with a train that is being operated over the crossing in compliance with statutory requirements. In determining what, in addition to compliance with statutory and commission regulations, the exercise of ordinary care may require of a railroad at a grade crossing, the railroad should be able to assume that those who drive over the railroad's 'right of way' at that crossing will do so in the exercise of ordinary care." *Hood, a Minor,* v. *New York, Chicago & St. Louis Rd. Co.,* 166 Ohio St., 529, 535, 536, 144 N. E. (2d), 104.

From the uncontroverted facts, the members of this court are of the opinion that reasonable minds could reach the conclusion only that this crossing, at the time of the accident, possessed no features which would make it more than ordinarily hazardous; and, under such circumstances, there is no basis for requiring extrastatuory warnings. Certainly, under the circumstances existing at and near the crossing, had the plaintiff looked, he could have seen the lighted engine as it got under way from a standing position in the waterworks yards and traversed the 33 feet of clear and unobstructed space between the fence and the highway; yet, his testimony is that he first saw the engine when it was partly on the highway, at which time he was within 75 feet of it and was unable to stop his car before reaching the track.

Having reached the conclusion that extrastatutory warnings were not required at this crossing, it necessarily follows that there was a failure of proof of the first allegation of negligence.

In respect to the second allegation of negligence, that "the defendant failed to ring a bell or sound a whisle * * *," it is established by the evidence that the whistle was blown and a bell rung as the engine started from its standing position within the waterworks yards and proceeded over the strip adjacent to the highway and onto and across the highway. The plaintiff did testify that he did not hear a bell or a whistle, but his further testimony, that he "didn't stop or look or listen" before he saw the engine, takes away any value which might otherwise be given to the fact that he heard no whistle or bell. *Hicks, Admr.*, v. *Baltimore & Ohio Rd. Co.*, 160 Ohio St., 307, 116 N. E. (2d), 307. See, also, *Hood, a Minor*, v. *N. Y., C. & St. L. Rd. Co., supra.* This allegation of negligence fails for want of proof.

The third allegation, of a failure "to keep a proper and reasonable lookout in front of said defendant's locomotive as it approached and started to traverse said highway crossing," could not possibly have a bearing upon this case. In the first place, there is no evidence indicating that the engineer did not keep a lookout in front of the locomotive as he drove it out and across the highway; and, secondly, a lookout "ahead" or "in front of" would not have permitted the sighting of a motorist approaching the crossing at a 90-degree angle until he was sufficiently close to have come within a straight-ahead line of vision. This allegation of negligence not only fails of proof, but could not, if proved, have been a proximate cause of the collision.

The fourth charge of negligence was a claimed failure to sound the locomotive whistle from a distance of 80 rods of the crossing. This allegation is predicated upon Section 4955.32, Revised Code, which is, in part, as follows:

"Every company shall attach to each locomotive engine passing upon its railroad a bell of the ordinary size in use on such engines and a steam or compressed air whistle. When an engine in motion and approaching a turnpike, highway, or street crossing or private crossing where the view of such crossing is obstructed by embankment, trees, curve, or other obstruction to view, upon the same line with the crossing, and in like manner where the railroad crosses any other traveled place, by

bridge or otherwise, the engineer or person in charge of such engine shall sound such whistle at a distance of at least 80 and not further than 100 rods from such crossing and ring such bell continuously until the engine passes the crossing."

There is no evidence tending to prove that the spur track extended 80 rods into the waterworks plant from the crossing. It is obvious that, if the spur track into the plant from the highway was not 80 rods in length, a literal compliance with the statute was impossible.

It is well settled that the law is not so unreasonable as to require the performance of impossibilities as a condition to the assertion of acknowledged rights (certainly the railroad company had a right to drive its locomotive across the highway for further work elsewhere); and, when Legislatures use language so broad as to lead to such results, courts may properly say that the Legislature did not intend to include those cases in which a literal obedience has become impossible. If a statute apparently requires the performance of something which cannot be performed, a court may hold it inoperative.

In the instant case, the locomotive had placed loaded cars of coal into the waterworks plant and left them there; upon it being driven away from the premises it stopped, as hereinbefore stated, at the plant entrance, approximately 33 feet from the northerly side of the 30-foot highway; at this point the engineer could see 2,000 feet down the highway to the west, and, after looking and seeing no approaching traffic, he sounded the whistle (the bell continued to ring) and proceeded on his way to cross the highway. He then, for the first time, saw the lights on the oncoming car approaching from the west.

Under these circumstances, the statute requiring the blowing of a whistle "at a distance of at least 80 and not further than 100 rods" from the crossing was inoperative, and negligence cannot be predicated thereon.

We are of the opinion that there is an absence of probative facts to support a conclusion of negligent conduct of the railroad company as a proximate cause of this accident.

In addition to the above conclusions, we find from evidence undisputed that negligence of the driver of the automobile proximately caused his damage.

The plaintiff testified that he was thoroughly familiar with the highway, the abutting properties, and the railroad crossing, having driven over the highway almost daily for a period of 15 years.

"Q. And each and every time as you traveled that road and you came up out of the undercut heading easterly, you knew that there was a railroad crossing approximately two thousand feet ahead. A. I knew to this extent. I didn't think about it, it may have been in my subconscious mind, I never gave it a thought.

"Q. Whether your thinking was an active thought or not, you at all times knew if you had thought about it, when you came up under the undercut there was a railroad track about two thousand feet ahead. A. I knew it was there, I didn't give it a thought.

"* * *

"Q. In fact, you knew the railroad track was there so well you wouldn't have to see the crossarm to know of its existence, would you? A. Right.

"* * *

"Q. Now, you knew the railroad crossing was there or should have known the crossing was there, you nevertheless were traveling 45 miles an hour up until you were 75 feet away from the crossing when you saw the train the first time? A. Right.

"* * *

"Q. You didn't stop or look or listen before you saw the engine on the track that night, did you? A. I didn't start stopping until I finally saw the engine.

"Q. Answer my question—you didn't stop or look or listen before you saw the engine on the track that night? A. No, I did not."

The plaintiff testified further:

"Q. Did you feel that you didn't have to stop, look or listen when you approached the crossing? A. Yes, because it was this type of crossing: As long as I have been crossing it, it wasn't a crossing that was used every day. It was used very infrequent. Any time it would have been used, of course, in the daytime, when I did see it cross that one time, I think you would

see it. Being an infrequent crossing, if it would be used at night, it should have been protected.

"* * *

"Q. So you feel you didn't have a duty in looking yourself, or stopping or slowing down or looking for cars? A. That's right; it wasn't a crossing that made you stop or look or listen."

The plaintiff undoubtedly was not looking or listening for a train, because, according to his own testimony, he first saw the locomotive when it occupied the highway. Had he looked, he could have certainly seen it as it emerged from the plant premises, 33 feet from the highway. At least it was then in plain view for two thousand feet along the highway to the west. There is no doubt that the headlight was burning and threw a ray ahead.

Ohio courts have consistently adhered in principle to the rule pronounced in *Pennsylvania Rd. Co. v. Rusynik*, 117 Ohio St., 530, 159 N. E., 826, 56 A. L. R., 538. It is:

"1. When a traveler upon a public highway approaches a steam railway which intersects at grade the highway, with one or more tracks, with an intention of crossing over, it is the duty of such traveler, before going upon the railway, to look both ways and listen for the approach of trains; and such looking and listening must be at such time and place and in such manner as will be effective to accomplish the ends designed thereby. * * *"

And see *Detroit, Toledo & Ironton Rd. Co. v. Rohrs*, 114 Ohio St., 493, 151 N. E., 714; *Toledo Terminal Rd. Co. v. Hughes*, 115 Ohio St., 562, 154 N. E., 916; *Patton, Admx., v. Pennsylvania Rd. Co.*, 136 Ohio St., 159, 24 N. E. (2d), 597.

In the instant case, if the driver of the car had looked and listened before approaching the track, in such manner as to be effective, he could have seen the standing or slow-moving locomotive and could have stopped before the collision.

On this question, reasonable minds could arrive at no other conclusion. It was the plaintiff's duty to use his senses of sight and hearing, and to operate his automobile with due care for his own safety. This he failed to do.

184

The fourth paragraph of the syllabus in *Patton, Admx.*, v. *Pennsylvania Rd. Co., supra,* is indeed appropriate to here quote. It is:

"4. The driver of a truck approaching a railroad grade crossing who is able, before going upon such crossing and while in a place of safety, to see a train also approaching such crossing, but voluntarily continues to operate his truck toward the railroad tracks at a rate of speed which brings it and the train to the crossing at or near the same instant, resulting in a collision causing his death, is negligent as a matter of law."

Testimony to the effect that no other persons stopped or slowed down at this crossing does not exonerate one from negligence. *Columbus & Hocking Coal & Iron Co.* v. *Tucker,* 48 Ohio St., 41, 26 N. E., 630, 29 Am. St., 528, 12 L. R. A., 577. And see 20 American Jurisprudence, 310, Evidence, Section 333.

We are of the opinion, and so hold as a matter of law, that the plaintiff's own negligence was a proximate cause of his damages.

The judgment will be reversed, and a final judgment entered for the appellant railroad company.

*Judgment reversed and final judgment for appellant.*

HUNSICKER, P. J., and STEVENS, J., concur.