Filed 12/1/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION, INC., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> STATE OF CALIFORNIA, <br><br> Defendant and Respondent. | F072310 <br><br> (Super. Ct. No. 14CECG00068) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Donald S. Black, Judge.

Lewis Brisbois Bisgaard & Smith, Daniel C. DeCarlo and Lance A. Selfridge; National Shooting Sports Foundation, Inc. and Lawrence G. Keane for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Tamar Pachter, Nelson R. Richards and Emmanuelle S. Soichet, Deputy Attorneys General, for Defendant and Respondent.

Caldwell Leslie & Proctor, Michael R. Leslie, Andrew Esbenshade and Amy E. Pomerantz as Amicus Curiae on behalf of Defendant and Respondent.

-ooOoo-

Penal Code section 31910, subdivision (b)(7)(A), provides that, commencing January 1, 2010, a semiautomatic pistol is an "'unsafe handgun'" if "it is not designed and equipped with a microscopic array of characters that identify the make, model, and serial number of the pistol, etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired …." Appellants, National Shooting Sports Foundation, Inc. (NSSF) and Sporting Arms and Ammunition Manufacturers' Institute, Inc. (SAAMI), filed the underlying action for declaratory relief seeking to enjoin this statute on the ground that it is impossible to comply with these dual placement microstamping requirements.

Respondent, the State of California, moved for judgment on the pleadings. The trial court granted this motion without leave to amend on the ground that the separation of powers doctrine precluded appellants' action.

Appellants acknowledge that the separation of powers doctrine generally prohibits a court from invalidating duly enacted legislation. However, appellants argue, the doctrine does not apply where the legislation is subject to a statutory proscription. According to appellants, Penal Code section 31910, subdivision (b)(7)(A), is subject to the statutory proscription set forth in Civil Code section 3531.

Civil Code section 3531 provides that "[t]he law never requires impossibilities." Appellants' complaint alleges that it is impossible for a firearm manufacturer to implement microstamping technology in compliance with Penal Code section 31910, subdivision (b)(7)(A), because no semiautomatic pistol can be so designed and equipped.

Because judgment was granted on the pleadings, we must accept the truth of the complaint's properly pleaded facts. (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1298 (*Dunn*).) Accordingly, we must accept appellants' claim that it is impossible to effectively microstamp the required characters on any part of a semiautomatic pistol other than the firing pin. We also reject respondent's position that

2.

stamping the characters in two places on the firing pin would comply with the statute. Appellants have the right to present evidence to attempt to prove their claim. Therefore, we will reverse the judgment and remand the matter for further proceedings.

## BACKGROUND

### 1. *The parties.*

Appellant NSSF is a nonprofit trade association for firearms, ammunition, hunting and recreational shooting sports industries. Its mission is to promote, protect and preserve hunting and shooting sports. NSSF's members include manufacturers, distributors, and retailers of semiautomatic pistols and other shooting and hunting products and services, as well as public and private shooting ranges, sportsmen's organizations, and individual hunters and target shooters.

Appellant SAAMI is a nonprofit trade association whose mission is to develop and publish industry recommended practices and voluntary standards pertaining to the safety, interchangeability, reliability and quality of semiautomatic pistols, other firearms and ammunition. SAAMI also provides assistance and advice to government agencies and promotes safe and responsible use and ownership of semiautomatic pistols, other firearms and ammunition. SAAMI members include manufacturers of semiautomatic pistols who sell products in California, either directly to licensed firearms retailers or to licensed wholesale firearms distributors. Virtually all new firearms sold in the United States adhere to the SAAMI standards.

### 2. *California regulation of handgun sales.*

In 1999, California enacted the Unsafe Handgun Act (UHA). This act uniformly bans the sale of a class of low cost, cheaply made handguns known as "Saturday Night Specials." Additionally, the UHA establishes quality and safety standards for all handguns sold in the state. (*Fiscal v. City and County of San Francisco* (2008) 158 Cal.App.4th 895, 912 (*Fiscal*).)

3.

The California Department of Justice is charged with compiling and maintaining a roster of handguns that have been tested and determined not to be unsafe. Only handguns on this roster may be manufactured, imported or sold in the state. (*Fiscal, supra,* 158 Cal.App.4th at p. 912; Pen. Code, § 32015.) Anyone who violates the UHA is subject to criminal penalties, including imprisonment in a county jail for up to one year. (Pen. Code, § 32000, subd. (a).)

The issue of microstamping semiautomatic pistols was first introduced in the California Legislature in February 2005 through Assembly Bill No. 352. This bill proposed that a semiautomatic pistol, not already listed on the approved roster, would be deemed an unsafe handgun if not "designed and equipped with a microscopic array of characters, that identify the make, model and serial number of the pistol, etched into the interior surface or internal working parts of the pistol, and which are transferred by imprinting on each cartridge case when the firearm is fired." (Assem. Bill No. 352 (2005-2006 Reg. Sess.) § 1.) Assembly Bill No. 352 ultimately "died in conference" in November 2006.

A bill requiring microstamping of semiautomatic pistols was introduced again in February 2007. As originally introduced, Assembly Bill No. 1471 proposed the same single placement microstamping that was contained in Assembly Bill No. 352.

Supporters of Assembly Bill No. 1471 argued that microstamping would provide law enforcement with evidence to help investigate, arrest and convict more people who use semiautomatic handguns in crimes. Supporters further claimed that the bill offered a cost-effective and tamper-resistant technology that would help police solve murders and reduce handgun trafficking.

Those who opposed Assembly Bill No. 1471 argued that the technology had not been shown to work under actual field conditions and thus mandating its implementation was excessively premature. More importantly, concerns were raised regarding the ability of criminals to defeat a pistol's microstamping features by defacing a single microstamp

4.

placed on the firing pin.  Both the Governor's Office of Planning and Research and the Senate Republican Office of Policy noted in 2007 reports that criminals could easily defeat the intended identification benefit.  Firing pins can be defaced by either mechanical means or by hand and are easy to remove and replace.

Thereafter, Assembly Bill No. 1471 was amended to require that the microscopic array of characters be etched or imprinted "*in two or more places on* the interior surface or internal working parts of the pistol."  (Assem. Amend. to Assem. Bill No. 1471 (2007-2008 Reg. Sess.) April 10, 2007.)  Later analysis of this amendment suggests that the intent was to have a second microstamp placed on a surface other than the firing pin. For example, the September 2007 analysis of the Senate Rules Committee states that the microstamping technology "consists of engraving microscopic characters onto the firing pin and other interior surfaces, which would be transferred onto the cartridge casing when the handgun is fired."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1471, Sept. 11, 2007.)

The law was passed by the Legislature in September 2007 and signed by the Governor in October 2007.  However, it was not to go into effect until the Department of Justice certified that the microstamping technology was available to more than one firearms manufacturer and unencumbered by any patent restrictions.  (Pen. Code, § 31910, subd. (b)(7)(A).)  The Department of Justice issued the required certification on May 17, 2013.

**3.**      ***The underlying proceedings.***

Appellants filed their complaint against respondent asserting a single cause of action for declaratory and injunctive relief.  Appellants alleged that "the provisions of California Penal Code section 31910, subdivision (b)(7)(A), are invalid as a matter of law and cannot be enforced because it is impossible for a firearm manufacturer to implement microstamping technology in compliance therewith, since no semi-automatic pistol can be designed or equipped with a microscopic array of characters identifying the make,

model and serial number of the pistol that are etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol, and that can be legibly, reliably, repeatedly, consistently and effectively transferred from both such places to a cartridge case when the firearm is fired." Appellants further claimed that "[s]cientific literature highlights the existence of the aforementioned actual controversy regarding the unproven and unreliable firearm microstamping technology" and provided specific examples to support their position.

Respondent demurred to the complaint on the grounds that appellants did not have standing and did not assert that the statute was unconstitutional. The trial court overruled the demurrer finding that appellants had associational standing and had sufficiently alleged a viable cause of action for declaratory relief.

Respondent answered the complaint and thereafter moved for judgment on the pleadings. Respondent argued that, because appellants declined to assert a constitutional challenge, their claim was precluded under the separation of powers doctrine. The trial court agreed and granted judgment on the pleadings without leave to amend.

## DISCUSSION

### 1.    *Standard of review.*

A motion for judgment on the pleadings is the equivalent of a general demurrer but is made after the time for a demurrer has expired. (*Alterra Excess & Surplus Ins. Co. v. Snyder* (2015) 234 Cal.App.4th 1390, 1400 (*Alterra*).) Accordingly, we treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of law. (*Dunn, supra,* 135 Cal.App.4th at p. 1298.) Further, the grounds for the motion must appear on the face of the complaint or be based on facts capable of judicial notice. (*Alterra, supra,* 234 Cal.App.4th at p. 1400.) Our standard of review is de novo. (*Ibid.*)

6.

**2.** *The separation of powers doctrine does not bar appellants' action.*

California's system of state government divides power among three coequal branches; legislative, executive, and judicial. (*People v. Bunn* (2002) 27 Cal.4th 1, 14 (*Bunn*).) Those charged with the exercise of one power may not exercise any other. Nevertheless, the branches share common boundaries and no sharp line between their operations exists. Indeed, this system assumes a certain degree of mutual oversight and influence. (*Ibid.*)

Despite this interdependence, each branch is vested with "certain 'core' or 'essential' functions that may not be usurped by another branch." (*Bunn, supra,* 27 Cal.4th at p. 14, citations omitted.) The Legislature's essential function is making law by statute which "embraces the far-reaching power to weigh competing interests and determine social policy." (*Id.* at pp. 14–15.) In contrast, the essential power of the judiciary is to resolve specific controversies between parties and, in doing so, interpret and apply existing laws. (*Id.* at p. 15.)

"The separation of powers doctrine protects each branch's core constitutional functions from lateral attack by another branch." (*Bunn, supra,* 27 Cal.4th at p. 16.) Accordingly, with limited exceptions, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations. (*Stinnett v. Tam* (2011) 198 Cal.App.4th 1412, 1426.)

The courts must also keep in mind that factual determinations necessary to perform the legislative function are of a peculiarly legislative character. Therefore, "'[i]f the validity of a statute depends on the existence of a certain state of facts, it will be presumed that the Legislature has investigated and ascertained the existence of that state of facts before passing the law.'" (*Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 511.) Thus, the courts must defer to the Legislature's factual determination unless it is palpably arbitrary and must uphold the challenged legislation so long as the Legislature could rationally have determined a set of facts that support it. (*Ibid.*)

7.

Nevertheless, the judiciary can invalidate legislation if there is some overriding constitutional, statutory or charter proscription. (*City and County of San Francisco v. Cooper* (1975) 13 Cal.3d 898, 915.) Appellants argue such a statutory proscription exists here because it is impossible to comply with Penal Code section 31910, subdivision (b)(7)(A), and, under Civil Code section 3531, "[t]he law never requires impossibilities."

In *Board of Supervisors v. McMahon* (1990) 219 Cal.App.3d 286, the court discussed impossibility of performance as a defense to a state mandate compelling counties to contribute to welfare grants. The appeal followed a hearing in the trial court where testimony was given and factual findings were made. Although the court concluded the county had not demonstrated it was impossible to comply with the law, it acknowledged that, consistent with Civil Code section 3531, "the law recognizes exceptions to statutory requirements for impossibility of performance." (*Board of Supervisors v. McMahon*, *supra*, at p. 300.)

As noted above, at this stage in the proceedings, we must accept as true appellants' factual allegation that it is impossible to effectively microstamp a semiautomatic pistol in two or more places on the interior of the pistol as required by Penal Code section 31910, subdivision (b)(7)(A). It would be illogical to uphold a requirement that is currently impossible to accomplish. Accordingly, appellants have the right to present evidence and if they are able to prove it is impossible to comply with the dual microstamping requirement, the separation of powers doctrine would not prevent the judiciary from invalidating that legislation. Although courts must generally defer to the Legislature's factual determination, that is not the case if such determination is arbitrary or irrational. Therefore, the trial court erred in granting judgment on the pleadings in favor of respondent based on the separation of powers doctrine.

**3.** *The public benefit exemption does not preclude appellants' complaint.*

Civil Code section 3423, subdivision (d), and Code of Civil Procedure section 526, subdivision (b)(4), provide that an injunction cannot be granted to prevent the execution of a public statute, by officers of the law, for the public benefit. However, these provisions do not bar judicial action where the invalidity of the statute is shown. (*Financial Indem. Co. v. Superior* Court (1955) 45 Cal.2d 395, 402; *Conover v. Hall* (1974) 11 Cal.3d 842, 850.) Since appellants are challenging Penal Code section 31910, subdivision (b)(7)(A), on the ground that it is invalid due to impossibility of performance, the public benefit exemption does not apply.

**4.** *Respondent's alternative compliance suggestions lack merit.*

As discussed above, Penal Code section 31910, subdivision (b)(7)(A), requires a semiautomatic pistol to have a microscopic array of characters etched or otherwise imprinted in "two or more places on the interior surface or internal working parts of the pistol." Respondent argues that gun manufacturers can comply with this section by stamping the characters in two places on the firing pin.

When a statute is clear and unambiguous, there is no need to construe its meaning. However, where the provisions are ambiguous or conflict, the court must engage in statutory construction. (*Santa Ana Unified School Dist. v. Orange County Development Agency* (2001) 90 Cal.App.4th 404, 408.) Here, we must determine what the Legislature meant by "two or more places."

In construing a statute, the court's fundamental task is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1064.) To begin, we examine the language of the statute, but do not give it a literal meaning if doing so would result in absurd consequences that the Legislature did not intend. Further, we do not construe statutes in isolation. Rather every statute must be read with reference to the entire scheme of law. At the same time, we must remain cognizant of "'the object to be achieved and the evil to be prevented by the

9.

legislation.  [Citation.]'"  (*Id*. at pp. 1064–1065.)  The legislative history may be considered in determining legislative intent.  (*Jevne v. Superior Court* (2005) 35 Cal.4th 935, 948 (*Jevne*).)

First, the language "two or more places" suggests microstamping must be on two or more different parts of the pistol rather than two stamps on the same part. Additionally, the legislative history indicates that was the Legislature's intent.

As outlined above, when this law was being considered, the ability of criminals to easily defeat the microstamping by defacing or removing the firing pin was raised as a concern.  Thereafter, the bill was amended to require the dual stamping.  Later analyses of the amendment indicate that the intent was to have a second microstamp placed on a surface other than the firing pin.  For example, the September 2007 Senate Rules Committee analysis describes the microstamping technology as "engraving microscopic characters onto the firing pin *and other interior surfaces*, which would be transferred onto the cartridge casing when the handgun is fired."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1471, Sept. 11, 2007, italics added.)  This is a proper source of legislative history.  (*Jevne, supra,* 35 Cal.4th at p. 948.)

Based on this history, it is apparent that the object the Legislature intended to achieve by amending the statute to require dual microstamping was to hinder criminals from defeating the process by defacing or removing the firing pin.  Thus, the only logical interpretation of the statute is that the Legislature intended the microstamping to be on two different internal parts of the pistol.  If one microstamp on the firing pin can be easily defeated, the same is true for two.

Respondent further asserts that appellants' members can comply with the law by not manufacturing or selling new-model handguns in California.  Respondent notes that the law does not compel these members to do anything.

10.

However, this solution does not provide the relief appellants are requesting. They are seeking a declaration that the statute is invalid because it is impossible to implement the dual placement microstamping requirement. Such a declaratory relief action is a proper way to challenge the legislation. (*La Franchi v. City of Santa Rosa* (1937) 8 Cal.2d 331.)

**5.** *Appellants have associational standing.*

An association that does not have standing in its own right may nonetheless have standing to bring a lawsuit on behalf of its members. (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003.) "Associational standing exists when: '(a) [the association's] members would otherwise have standing to sue in their own right; (b) the interests [the association] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" (*Id.* at p. 1004.)

Respondent does not dispute that appellants meet the first two requirements for associational standing, i.e., appellants' members will be adversely affected by the dual microstamping requirement if it is impossible to comply as alleged and the interests appellants seek to protect are germane to their organizational purpose. Rather, respondent asserts that appellants do not have standing because a court must consider individual attempts to comply with Penal Code section 31910, subdivision (b)(7)(A), to determine whether substantial compliance is possible. Therefore, respondent asserts, participation by appellants' members to show what steps they have taken to comply is required.

However, appellants' position is that it is physically impossible to comply with the dual microstamping requirement using current technology. At this stage in the proceeding, we must accept that allegation as true. It is unreasonable to require an individual to attempt what is impossible to accomplish. Accordingly, substantial

11.

compliance is not a consideration.  Therefore, standing to pursue this action does not require the participation of appellants' individual members.

## DISPOSITION

The judgment is reversed and the matter remanded for further proceedings. Appellants to recover their costs on appeal.

_____

LEVY, Acting P.J.

WE CONCUR:


_____

GOMES, J.


_____

FRANSON, J.