Filed 6/28/18

# IN THE SUPREME COURT OF CALIFORNIA

NATIONAL SHOOTING SPORTS )
FOUNDATION, INC., et al., )
            )
        Plaintiffs and Appellants, )
            )           S239397
        v. )
            )        Ct.App. 5 F072310
STATE OF CALIFORNIA, )
            )        Fresno County
        Defendant and Respondent. )   Super. Ct. No. 14CECG00068
_____ )

Civil Code section 3531 provides that "[t]he law never requires impossibilities." In this case, plaintiff National Shooting Sports Foundation, Inc. (NSSF) argues that this provision authorizes a court to declare another statute, Penal Code section 31910, subdivision (b)(7)(A), unenforceable when a complainant alleges, and the court finds, that complying with the statute is impossible. The Court of Appeal agreed. Because such an interpretation of section 3531 is contrary to established principles of statutory interpretation, we reverse.

## I.

In 1999, the Legislature enacted the Unsafe Handgun Act (the Act) to establish safety standards for all handguns manufactured, imported, and sold in the state. (Pen. Code, former §§ 12125–12133, repealed by Stats. 2010, ch. 711, § 4, eff. Jan. 1, 2012; reenacted as Pen. Code, §§ 31900–32110 without substantive

SEE CONCURRING OPINION

change by Stats. 2010, ch. 711, § 6, eff. Jan. 1, 2012.)  Under the Act, the California Department of Justice is charged with testing new handguns for their compliance with the safety standards; it is also charged with maintaining a roster of all handguns that may be manufactured, imported, or sold.  (Pen. Code, § 32015.)  A violation of the Act is punishable by imprisonment in a county jail for up to one year.  (Pen. Code, § 32000, subd. (a).)

In 2007, the Legislature amended the definition of unsafe handguns to include "all semiautomatic pistols that are not already listed on the roster pursuant to Section 32015 [if] not designed and equipped with a microscopic array of characters that identify the make, model, and serial number of the pistol, etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired . . . ."  (Pen. Code, § 31910, subd. (b)(7)(A) (hereafter Penal Code section 31910(b)(7)(A)).)  According to the statute, this safety standard, known as dual placement microstamping, was to take effect on "January 1, 2010 . . . provided that the Department of Justice certifies that the technology used to create the imprint is available to more than one manufacturer unencumbered by any patent restrictions."  (*Ibid.*)  The Department of Justice issued the certification on May 17, 2013.  (Cal. Dept. of Justice, Div. of Law Enforcement, Information Bull. No. 2013-BOF-03 (May 17, 2013) <https://www.oag.ca.gov/sites/all/files/agweb/pdfs/firearms/infobuls/2013-BOF-03.pdf> [as of June 22, 2018].  All internet citations in this opinion are archived by year, docket number, and case name at http://www.courts.ca.gov/38324.htm.)  At oral argument, the Attorney General noted that this certification confirms the lack of any patent restrictions on the imprinting technology, not the availability of the technology itself.

Following the certification, NSSF filed a complaint with a single cause of action for declaratory and injunctive relief. Alleging that dual placement microstamping technology is impossible to implement, the complaint challenged Penal Code section 31910(b)(7)(A) as unenforceable under Civil Code section 3531. The Attorney General moved for judgment on the pleadings, and the trial court, concluding that separation of powers precluded NSSF's action, granted the motion without leave to amend.

On appeal, the Court of Appeal observed that "the courts must defer to the Legislature's factual determination unless it is palpably arbitrary and must uphold the challenged legislation so long as the Legislature could rationally have determined a set of facts that support it." (*National Shooting Sports Foundation v. State* (2016) 6 Cal.App.5th 298, 306 (*National Shooting*).) But the court continued by observing that "[n]evertheless, the judiciary can invalidate legislation if there is some overriding constitutional, statutory or charter proscription." (*Ibid.*) The court assumed as true the allegation that it is impossible to manufacture a semiautomatic pistol with dual placement microstamping and concluded that this impossibility placed Penal Code section 31910(b)(7)(A) in tension with Civil Code section 3531 as an overriding statutory proscription. The court held that NSSF may present evidence of impossibility and that the judiciary may invalidate Penal Code section 31910(b)(7)(A) if compliance is shown to be impossible. (*National Shooting*, *supra*, 6 Cal.App.5th at p. 306.)

We granted review. The sole dispute before us is whether a court can invalidate Penal Code section 31910(b)(7)(A) on the basis of Civil Code section 3531's declaration that "[t]he law never requires impossibilities." We are not asked to consider a constitutional challenge to Penal Code section 31910(b)(7)(A) or an administrative challenge to the Department of Justice's 2013 certification (see Code Civ. Proc., §§ 1085, 1094.5).

3

**II.**

In reviewing an order granting or denying a motion for judgment on the pleadings, we accept as true all material allegations in the complaint. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 205.) Here we assume that complying with the requirements of Penal Code section 31910(b)(7)(A) is impossible, and we consider whether Civil Code section 3531's declaration that "[t]he law never requires impossibilities" renders the dual placement microstamping requirement invalid.

Civil Code section 3531 was enacted in 1872 under a part of the Civil Code titled "Maxims of Jurisprudence," which are "intended not to qualify any of the foregoing provisions of th[e] code, but to aid in their just application." (Civ. Code, § 3509.) Neither party disputes that section 3531 is a maxim of jurisprudence; they disagree on its legal effect. The Attorney General argues that although section 3531 "can help courts ascertain and effectuate the Legislature's intent when construing statutes," it does "not give rise to substantive rights or causes of action, or empower courts to rewrite or invalidate later-enacted laws." NSSF argues that section 3531 has full legal effect like any other legislative enactment.

We understand Civil Code section 3531 just as Civil Code section 3509 provides: It is an interpretative canon for construing statutes, not a means for invalidating them. Impossibility can occasionally excuse noncompliance with a statute, but in such circumstances, the excusal constitutes *an interpretation of the statute* in accordance with the Legislature's intent, not an invalidation of the statute.

For example, our courts have excused compliance with a statute of limitations where timely compliance was impossible; in such instances, the excusal was based on an interpretation of the statute of limitations in accordance with an underlying legislative intent to avoid unjust application of the statute.

4

(See *Lewis v. Superior Court* (1985) 175 Cal.App.3d 366, 372 (*Lewis*) ["Careful comparison of these statutory exceptions reveals the manifest common legislative purpose of attempting to avoid unjust application of statutes of limitation where circumstances effectively render timely commencement of action impossible or virtually impossible."].) Where " '[t]he purpose of the statute is plain[, i.e.,] to prevent *avoidable* delay for too long a period' " (*id.* at p. 374, quoting *Christin v. Superior Court* (1937) 9 Cal.2d 526, 532), we can adopt "a statutory construction recognizing an implicit . . . exception" in particular circumstances (*Lewis*, at p. 376). But impossibility does not authorize a court to go beyond interpreting the statute and simply invalidate it altogether. Impossibility, as an aid to statutory interpretation, is akin to the absurdity canon, which counsels courts to "avoid any [statutory] construction that would produce absurd consequences." (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 578; see *Lewis*, at p. 377 ["It would be absurd to attribute to the Legislature an intent to construe the language and underlying purpose . . . so narrowly."].)

The Court of Appeal relied on *Board of Supervisors v. McMahon* (1990) 219 Cal.App.3d 286 (*McMahon*), but that case does not authorize judicial invalidation of a statute on the ground that compliance is impossible. In *McMahon*, Butte County challenged on various grounds the application of a state statute requiring counties to contribute to the funding of a welfare program. (*Id.* at pp. 291–292.) One of the county's claims was that "its financial straits [left] it literally unable to comply with the state mandate." (*Id.* at p. 299.) *McMahon* rejected this claim on the ground that the evidence did not demonstrate that compliance was actually impossible. (*Id.* at pp. 300–302.) Nothing in *McMahon* suggests that the court would have invalidated the statute if the evidence had shown that compliance was in fact impossible. *McMahon* simply observed that that "[c]onsistent with th[e] maxim" stated in Civil Code section 3531, "the law

5

recognizes exceptions to statutory requirements for impossibility of performance." (*McMahon*, at p. 300.)  Recognizing an implied exception to a statutory requirement is a far cry from vitiating the requirement altogether.

*McMahon* is consistent with the approach we took in *Sutro Heights Land Co. v. Merced Irr. Dist.* (1931) 211 Cal. 670.  In that case, we excused compliance with a state statute requiring drainage efforts that would have brought "financial ruin" and "irreparable injury" to an irrigation district and its landowners.  (*Id.* at p. 703.)  Our reasoning made clear that in so holding, we were interpreting, not invalidating, the statute:  "We do not believe that, under this state of facts, it was ever intended by those responsible for the enactment of the Drainage Act of 1907, that an irrigation district, situated as is the defendant in this action, should be compelled to work its own destruction by undertaking to provide drainage facilities for the district, the expense of which is beyond its financial ability to meet or pay for."  (*Ibid.*)

In sum, the case law recognizes that a statute may contain an implied exception for noncompliance based on impossibility where such an exception reflects a proper understanding of the legislative intent behind the statute.  We are not aware of any appellate precedent in California that has invoked Civil Code section 3531 or impossibility of compliance to invalidate a statute itself.

NSSF cites three out-of-state cases to support its expansive reading of Civil Code section 3531.  In *Gigliotti v. New York, Chicago & St. Louis R. Co.* (Ohio Ct.App. 1958) 157 N.E.2d 447, 452 (*Gigliotti*), the court observed that "[i]t is well settled that the law is not so unreasonable as to require the performance of impossibilities as a condition to the assertion of acknowledged rights . . . ; and, *when Legislatures use language so broad as to lead to such results, courts may properly say that the Legislature did not intend to include those cases in which a literal obedience has become impossible.*  If a statute apparently requires the

6

performance of something which cannot be performed, a court may hold it inoperative." (*Id.* at p. 452, italics added.) The court in *Gigliotti* was simply stating, consistent with California case law, that impossibility of compliance can render a statutory mandate "inoperative" in a particular instance insofar as it is apparent that "the Legislature did not intend to include" that instance within the ambit of the statutory mandate. (*Ibid.*)

Citing *Gigliotti*, the court in *Ivaran Lines, Inc. v. Waicman* (Fla.Dist.Ct.App. 1984) 461 So.2d 123, 126 held that "violation of a statute or regulation . . . is excused where it appears without dispute that compliance with the statute is impossible even in the exercise of reasonable diligence." In excusing compliance with the statute at issue, the court did not make clear whether it was reading into the statute an implied exception for impossibility or declaring the statute altogether invalid when compliance was impossible. (See *id.* at pp. 125–126.) To the extent the court was doing the latter, we do not find it persuasive. Its scant reasoning does not grapple with basic principles of statutory interpretation or with the limited context in which *Gigliotti* recognized judicial authority to declare a statute "inoperative" due to impossibility of compliance. (*Gigliotti*, *supra*, 157 N.E.2d at p. 452.)

Finally, in *Buck v. Harton* (M.D.Tenn. 1940) 33 F.Supp. 1014, a federal district court invalidated a statute after finding that compliance was impossible, but the court did so in the context of a constitutional challenge. Claiming that impossibility of compliance with a statute burdens or violates a constitutional right is quite different from invoking such impossibility as a challenge under one statute to invalidate another.

Citing *City and County of San Francisco v. Cooper* (1975) 13 Cal.3d 898, 915, the Court of Appeal observed that "the judiciary can invalidate legislation if there is some overriding constitutional, statutory or charter proscription."

7

(*National Shooting*, *supra*, 6 Cal.App.5th at pp. 305–306.)  But nothing in *Cooper* suggests that Civil Code section 3531 can be read as an "overriding . . . statutory . . . proscription" (*Cooper*, at p. 915) that invalidates Penal Code section 31910(b)(7)(A).  In *Cooper*, the plaintiff sought to invalidate a city ordinance and school district resolution on the ground that "both measures were enacted under the coercive influence of an 'illegal' public employee strike."  (*Cooper*, at p. 912.)  In rejecting this claim, we explained that the plaintiff's facial challenge to the locally enacted measures must be analyzed in relation to any overriding charter, statute, or constitutional provision.  (*Id.* at p. 918 ["In the absence of controlling constitutional, statutory or charter limitations, local legislators retain authority to determine the appropriate legislative response to an allegedly illegal strike."].)  After determining that "there was no constitutional, statutory or charter provision which barred either body from enacting legislation in response to, or as a result of, an 'illegal' public employee strike" (*id.* at p. 913), we concluded that the local measures could not be invalidated on the basis of public policy or any other grounds (*id.* at pp. 913–918).  *Cooper* does not suggest that a statute can be invalidated by an earlier statute enacted by the same legislative body.

Here, the Legislature enacted the Unsafe Handgun Act to restrict the manufacture, import, and sale of unsafe handguns, and the Legislature amended the Act in 2007 so that once the Department of Justice has made the certification specified in Penal Code section 31910(b)(7)(A), "all semiautomatic pistols that are not already listed on the roster pursuant to Section 32015" are designated as unsafe handguns if they lack dual placement microstamping.  Neither the text nor the purpose of the Act contemplates that a showing of impossibility can excuse compliance with the statutory requirement once the statute goes into effect.  The Legislature specified that the statute's requirement takes effect on January 1, 2010 provided that the Department of Justice issues the certification.  We express no

8

view on the validity of the Department's certification or whether it included an adjudication of impossibility. Our conclusion here is that the statute does not authorize courts to independently carve out exceptions for impossibility after that administrative determination has been made.

NSSF has not brought a constitutional challenge to the statute, nor has it petitioned for a writ of mandate against the Department of Justice for improperly certifying the availability of dual placement microstamping technology (and we express no view on the merits of those possibilities). Instead, NSSF has invoked the impossibility of compliance as a basis for voiding the statute. But Civil Code section 3531's maxim that "[t]he law never requires impossibilities" is an interpretive aid that occasionally authorizes an exception to a statutory mandate in accordance with the Legislature's intent behind the mandate. The maxim has never been recognized, and we do not recognize it today, as a ground for invalidating a statutory mandate altogether.

## CONCLUSION

We reverse the judgment of the Court of Appeal and remand to that court to affirm the trial court's judgment granting the Attorney General's motion for judgment on the pleadings.

**LIU, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**EPSTEIN, J.**[*]

---

[*]      Presiding Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CONCURRING OPINION BY CHIN, J.**


Penal Code section 32000 makes it a crime to manufacture, import, sell, give, or lend any "unsafe handgun." Penal Code section 32015, subdivision (a) requires the Department of Justice to maintain a roster of handguns that have been "determined *not* to be unsafe" (italics added), and therefore that *may* be sold in the state. Finally, Penal Code section 31910, subdivision (b)(7)(A) (hereafter section 31910(b)(7)(A)) defines "unsafe handgun" to include "all semiautomatic pistols that are not already [as of January 1, 2010] listed on the roster pursuant to Section 32015 [unless the pistol is] designed and equipped with a microscopic array of characters that identify the make, model, and serial number of the pistol, etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired . . . ." Section 31910(b)(7)(A) is, by its terms, conditioned on the Department of Justice issuing a certification that the relevant microstamping technology is available to multiple manufacturers free of patent restrictions, and the Department issued that certification on May 17, 2013.

This case concerns plaintiffs' claim that compliance with the dual placement microstamping requirement of section 31910(b)(7)(A) is impossible in all situations, and therefore that the requirement should be invalidated generally. Plaintiffs do not, however, make a constitutional argument. Instead, they rely on

1

Civil Code section 3531, a maxim of statutory construction that urges courts to construe statutes to avoid impossibilities. Thus, plaintiffs argue that a maxim of statutory construction can be the basis for completely invalidating a statute, not merely interpreting one. That is clearly wrong for the reasons the majority explains (see maj. opn., *ante*, at pp. 4–6), and therefore I concur.

The majority opinion, however, includes this problematic statement: "Neither the text nor the purpose of the [Unsafe Handgun] Act contemplates that *a showing of impossibility can excuse compliance* with the statutory requirement once the statute goes into effect. The Legislature specified that the statute's requirement takes effect on January 1, 2010 provided that the Department of Justice issues the certification. We express no view on the validity of the Department's certification or whether it included an adjudication of impossibility. Our conclusion here is that *the statute does not authorize courts to independently carve out exceptions for impossibility* after that administrative determination has been made." (Maj. opn., *ante*, at pp. 8–9, italics added.)

The foregoing statement expressly prohibits any court from construing section 31910(b)(7)(A) narrowly so as to "excuse compliance" or recognize "exceptions" based on impossibility. But as the majority concedes, "[i]mpossibility can occasionally *excuse noncompliance* with a statute" (maj. opn., *ante*, at p. 4, italics added) and "a statute may contain an *implied exception* for noncompliance based on impossibility . . ." (*id.* at p. 6). Thus, the majority's holding exceeds the scope of the rule it carefully delimits in its discussion of Civil Code section 3531. (See maj. opn., *ante*, at pp. 4–7.)

In no less than five summations of its five-and-a-half page analysis, the majority sets up a distinction between (1) using a maxim of statutory construction to interpret a statute narrowly (which is permitted), and (2) using one to invalidate a statute altogether (which is not permitted). Thus, on page 4 of its opinion, the

2

majority states:  "Civil Code section 3531 . . . is an interpretative canon for *construing statutes, not a means for invalidating them.  Impossibility can occasionally excuse noncompliance* with a statute, but in such circumstances, the excusal constitutes an interpretation of the statute in accordance with the Legislature's intent, *not an invalidation of the statute*."  (Italics added and original italics removed.)  Next, on page 5 of its opinion, the majority states: "Recognizing *an implied exception* to a statutory requirement is a far cry from *vitiating the requirement altogether*."  (Italics added.)  Next, on page 6 of its opinion, the majority states:  "In sum, the case law recognizes that *a statute may contain an implied exception for noncompliance based on impossibility* where such an exception reflects a proper understanding of the legislative intent behind the statute.  We are not aware of any appellate precedent in California that has invoked Civil Code section 3531 or impossibility of compliance *to invalidate a statute itself*."  (Italics added.)  Next, on pages 6 and 7 of its opinion, the majority states:  "[C]onsistent with California case law, . . . impossibility of compliance *can render a statutory mandate 'inoperative' in a particular instance* insofar as it is apparent that 'the Legislature did not intend to include' that instance within the ambit of the statutory mandate."  (Italics added.)  Finally, on page 9 of its opinion, the majority states:  "Civil Code section 3531's maxim that '[t]he law never requires impossibilities' is an interpretive aid that *occasionally authorizes an exception to a statutory mandate* in accordance with the Legislature's intent behind the mandate.  The maxim has *never been recognized*, and we do not recognize it today, *as a ground for invalidating a statutory mandate altogether*." (Italics added.)

The distinction the majority draws could hardly be clearer, but then with virtually no explanation, the majority simply ignores it, holding that no court may

3

construe section 31910(b)(7)(A) narrowly to "excuse compliance" or recognize "exceptions" based on impossibility. (Maj. opn., *ante*, at pp. 8, 9.)

It may be that the majority's decision to bar courts from recognizing exceptions to section 31910(b)(7)(A) is a good one as a matter of public policy, but it still must have some sound basis in law. If the majority is asserting, by way of statutory construction, that this particular statute leaves no room for exceptions based on impossibility, the majority never details how it reaches that conclusion and cites no case in which the applicability of a maxim of statutory construction to a particular statute has been held to be facially foreclosed, without consideration of a particular context in which the statute is invoked. It might be that compliance with section 31910(b)(7)(A), although generally possible, is impossible in a particular circumstance that the Legislature did not consider, and the majority gives no persuasive reason for precluding future litigants from making that argument.

The only possible justification that the majority gives for its broad holding is an unexplained reference to the Department of Justice's certification. As noted, the majority says: "Neither the text nor the purpose of the Act contemplates that a showing of impossibility can excuse compliance with the statutory requirement once the statute goes into effect. *The Legislature specified that the statute's requirement takes effect on January 1, 2010 provided that the Department of Justice issues the certification. We express no view on the validity of the Department's certification or whether it included an adjudication of impossibility.* Our conclusion here is that the statute does not authorize courts to independently carve out exceptions for impossibility *after that administrative determination has been made.*" (Maj. opn., *ante*, at pp. 8–9, italics added.)

The majority seems to be saying that the Department of Justice's certification procedure somehow means that this statute, unlike all other statutes,

4

is not subject to being construed narrowly, in a particular instance, to avoid an impossibility that the Legislature did not consider. But the majority never states what it is about the certification procedure that justifies ignoring the distinction that the majority spends five and one-half pages delineating. The fact that the majority bars courts from "carv[ing] out exceptions . . . *after* [*the Department of Justice's*] *administrative determination has been made*" (maj. opn., *ante*, at p. 9, italics added) implies that the Department of Justice was empowered to adjudicate whether this statute was subject to impossibility exceptions. Thus, although the majority concedes that impossibility can sometimes provide a basis for recognizing a statutory exception (maj. opn., *ante*, at pp. 4–7, 9), the majority precludes courts from recognizing any such exception to section 31910(b)(7)(A), implying that the question was one that should have been adjudicated at the administrative level and that the only recourse is writ review of the Department of Justice's certification or a constitutional challenge. The implication that the Department of Justice's certification proceeding could have adjudicated the question of exceptions to section 31910(b)(7)(A) based on impossibility is simply wrong as a factual matter, and it is not an argument that the Attorney General makes in his briefs in this court.

As the Attorney General noted at oral argument, the Department of Justice's certification addressed only whether any patents restricted access to the relevant microstamping technology. A quick look at the legislative history of section 31910(b)(7)(A) confirms this point. Subdivision (b)(7)(A) was added to Penal Code section 31910 in 2007 by the enactment of Assembly Bill No. 1471 (2007–2008 Reg. Sess.) (Assem. Bill 1471). In considering Assem. Bill 1471, the question arose whether microstamping was a "sole source technology." (See Sen. Com. on Pub. Safety, Rep. on Assem. Bill No. 1471 (2007-2008 Reg. Sess.) as amended Apr. 10, 2007, p. 9 (Sen. Pub. Safety Rep.).) The report of the Senate

5

Committee on Public Safety noted that "[m]icrostamping technology is a patented technology belonging to one company . . . ." (*Ibid.*) This report further noted, however, that a board member of that company had issued a press release clarifying "that a royalty free license will be provided and [will] cover its patented microstamping technology as applied to semi-automatic handguns sold for civilian use within the United States and its territories . . . ." (*Id*. at p. 10.) The Senate Committee's report added that the author of Assem. Bill 1471 would propose an amendment to address the concern that patent restrictions might limit the availability of the microstamping technology. The amendment would add the following condition: "provided that the Department of Justice certify that the technology used to create the imprint is available to more than one manufacturer unencumbered by any patent restrictions." (Sen. Pub. Safety Rep., at p. 11.) As ultimately enacted, Assem. Bill 1471 included that language, thus giving rise to the Department of Justice certification procedure on which the majority seems to rely to support its broad holding.

It is clear, however, that the certification procedure had absolutely nothing to do with adjudicating the question of impossibility-based exceptions to section 31910(b)(7)(A). Rather, it was limited to confirming that the patent holder of the microstamping technology had in fact made the technology widely available, as the press release had indicated it would do. And, consistent with that reading of the statute, the certification that the Department of Justice issued states only this: "The California Department of Justice has conducted *a review of known and available patent restrictions* applicable to the microscopic-imprinting technology described in § 31910, subdivision (b)(7)(A). Based on this review, the Department certifies that, as of May 17, 2013, *this technology is available to more than one manufacturer unencumbered by any patent restrictions*." (Cal. Dept. of Justice, Div. of Law Enforcement, Information Bull. No. 2013-BOF-03 (May 17,

6

2013) <https://www.oag.ca.gov/sites/all/files/agweb/pdfs/firearms/infobuls/2013-BOF-03.pdf> [as of June 28, 2018], italics added.  All internet citations in this opinion are archived by year, docket number, and case name at http://www.courts.ca.gov/38324.htm.)  By its own terms, this certification does not address whether section 31910(b)(7)(A) allows exceptions based on impossibility; rather, it addresses whether patent restrictions limit access to the relevant technology.  In summary, the implied basis of the majority's broad holding (that the Department of Justice was the place to adjudicate the question of impossibility-based exceptions to section 31910(b)(7)(A), and therefore no court can carve out such exceptions) is not grounded in fact.  The Department of Justice did not have authority to adjudicate that question, and it did not do so.

I agree with the majority that Civil Code section 3531 is a maxim of statutory construction that authorizes courts to construe statutes to avoid impossibilities.  (See maj. opn., *ante*, at pp. 4–7, 9.)  I also agree that a statutory requirement cannot be completely invalidated based on Civil Code section 3531.  (See maj. opn., *ante*, at pp. 4–7, 9.)  I disagree, however, that the Department of Justice's certification has any relevance to the question of carving out exceptions to section 31910(b)(7)(A) based on impossibility.  Hence, I reject the majority's broad holding that "the statute does not authorize courts to independently carve out exceptions for impossibility *after* [*the Department of Justice's*] *administrative determination has been made*" (maj. opn., *ante*, at pp. 8–9, italics added).  In my view, courts remain free, based on legislative intent, to construe section 31910(b)(7)(A) as inapplicable to a particular case because compliance in that case would be impossible.

Subject to that qualification, I concur.

**CHIN, J.**

7

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** National Shooting Sports Foundation, Inc. v. State of California
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 6 Cal.App.5th 298
**Rehearing Granted**


_____

**Opinion No.** S239397
**Date Filed:** June 28, 2018
_____

**Court:** Superior
**County:** Fresno
**Judge:** Donald S. Black


_____

**Counsel:**

Lawrence G. Keane; Lewis Brisbois Bisgaard & Smith, Daniel C. DeCarlo and Lance A. Selfridge for Plaintiffs and Appellants.

Kamala D. Harris and Xavier Becerra, Attorneys General, Edward C. DuMont, State Solicitor General, Janill L. Richards, Principal Deputy State Solicitor General, Samuel P. Siegel, Associate Deputy State Solicitor General, Douglas J. Woods and Thomas S. Patterson, Assistant Attorneys General, Tamar Pachter, Emmanuelle S. Soichet, Mark R. Beckington and Nelson R. Richards, Deputy Attorneys General, for Defendant and Respondent.

J. Adam Skaggs, Hannah Shearer; Munger, Tolles & Olson, David H. Fry and Craig A. Lavoie for Giffords Law Center to Prevent Gun Violence as Amicus Curiae on behalf of Defendant and Respondent.

Caldwell Leslie & Proctor, Boies Schiller Flexner, Michael R. Leslie, Andrew Esbenshade and Amy E. Pomerantz for Office of the Los Angeles City Attorney as Amicus Curiae on behalf of Defendant and Respondent.

UCLA School of Law, Sean B. Hecht and Meredith J. Hankins for California Environmental Law Professors Ann Carlson, Holly Doremus, Richard Frank, Meredith Hankins, Sean Hecht, Helen Kang, John Leshy, Albert Lin, Dave Owen, Claudia Polsky, James Salzman, Daniel Selmy and Deborah Sivas as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Lance A. Selfridge
Lewis Brisbois Bisgaard & Smith
633 West 5th Street, Suite 4000
Los Angeles, CA  90071
(213) 250-1800

Janill L. Richards
Principal Deputy State Solicitor General
1515 Clay Street, 20th Floor
Oakland, CA  94612-0550
(510) 622-2130