Filed 10/13/25  Mack v. City of Guadalupe CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RYAN MACK,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF GUADALUPE, ET AL.,<br><br>    Defendants and Respondents. | 2d Civ. No. B342205<br>(Super. Ct. No. 23CV01214)<br>(Santa Barbara County) |

Ryan Mack appeals after the trial court granted summary adjudication and summary judgment following a motion by respondents City of Guadalupe, Emiko Gerber, and Michael Cash.  Appellant, a former Fire Captain, had asserted discrimination and retaliation claims under the Fair Employment and Housing Act (FEHA).  Appellant contends the trial court erred and that he established a genuine issue of material fact as to both claims.  We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was a Fire Captain with the City of Guadalupe (the City) from 2017 through June 5, 2023. He was a vocal union advocate who "engaged in numerous protected activities including protected speech, all related to the safety and working conditions of firefighters with the City." "At numerous meetings and in public gatherings, [appellant] voiced his opinion on union matters related to the efficiency, proper running and competency of the City and its Fire Department." According to appellant, respondents perceived him to be a zealous union advocate and one of the primary causes of the issues the union had exposed. Appellant has alleged "he was targeted for being a part of MOU negotiations, for standing up to the City to pay out of pocket for an appeal process, and for opposing 'fake disciplines.'"

On March 8, 2022, in accordance with department practice, appellant texted his employer that he was calling in sick that day. Chief Michael Cash, appellant's supervisor, called him about six times that day. Appellant called back and spoke with Chief Cash for about two minutes.

Chief Cash stated that he was concerned about appellant's mental welfare and that he believed appellant was under a lot of stress due to work. Appellant said, "I do not feel 100 percent, and I don't feel capable of doing the job right now." According to appellant, Chief Cash wanted a reason why he was sick and asked if it was stress. Appellant indicated "stress is a part of the job. Of course there's stress involved." But appellant stated stress was "not why I'm calling in sick."

On March 10, Emiko Gerber (the City's Human Resources Manager) contacted appellant and indicated he was being ordered to complete physical and psychological evaluations. A

2

fitness for duty memorandum from Chief Cash cited appellant's "requesting sick leave from duty for stress related issues regarding a recent misconduct investigation concerning [appellant's] on-duty actions, and [his] statements regarding [his] physical and emotional condition, and stating that [he does] not want to work unless [he is] 100% physically and mentally prepared . . . ." The memorandum stated failure to comply "may be deemed insubordination and shall be subject to discipline up to and including termination." It further stated "[a]ll information obtained from the examination will be confidential and be part of [appellant's] personnel file."

The City's policy and procedure manual authorizes physical and psychological fitness for duty examinations. Appellant submitted to the examinations and was cleared to return to work in April 2022. On June 5, 2023, appellant resigned.

The court granted summary adjudication as to both the discrimination and retaliation claims.[1] The court also granted Cash's and Gerber's summary judgment motion in their individual capacities. The court subsequently entered judgment for respondents.

## DISCUSSION

We conclude appellant did not suffer an adverse employment action as a matter of law. Thus, summary adjudication was proper as to his discrimination and retaliation claims. (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 38 (*Zamora*) ["We may affirm summary adjudication on any correct legal theory, as long as the parties

---

[1] We grant respondents' unopposed request for judicial notice of the trial court's tentative ruling and order granting summary judgment and adjudication. (Evid. Code, § 459.)

3

had an adequate opportunity to address that theory in the trial court."].)

"A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty. (Code Civ. Proc., § 437c, subd. (f)(1).) Summary adjudication motions are "procedurally identical" to summary judgment motions. (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1290.)

"[A] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant can meet their initial burden by showing "that one or more elements of the cause of action . . . cannot be established . . . ." (*Id.*, subd. (p)(2).) The burden then shifts to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . ." (*Ibid.*)

"There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845.)

"We review an order granting summary judgment or summary adjudication de novo." (*Zamora, supra*, 71 Cal.App.5th at p. 29.) "[W]e view the evidence in a light favorable to the losing party . . . , liberally construing [the losing party's] evidentiary submission while strictly scrutinizing the moving party's own showing and resolving any evidentiary doubts or ambiguities in the losing party's favor." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 859.)

*Discrimination Claim*

FEHA prohibits employers from discriminating "in compensation or in terms, conditions, or privileges of employment" because of a mental disability. (Govt. Code, § 12940, subd. (a).)[2] The elements of appellant's disability discrimination claim are that he "(1) suffered from a disability or was regarded as suffering from a disability, (2) could perform the essential duties of a job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." (*Glynn v. Superior Court* (2019) 42 Cal.App.5th 47, 53, fn. 1.)

Citing *Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 123, appellant claims the *McDonnell Douglas*[3] burden-shifting framework is inapplicable because there is "direct evidence that Chief Cash perceived Appellant to have a mental disorder." We agree *McDonnell Douglas* has no bearing here, but for a different reason. "The framework articulated in *McDonnell Douglas* is intended to evaluate the manner in which the parties may prove or disprove an employer's discriminatory motive in taking an adverse employment action." (*Miller v. Department of Corrections & Rehabilitation* (2024) 105 Cal.App.5th 261, 275, fn. 6.) Our decision rests on the lack of an adverse employment action. Thus, there is no need to examine

---

[2] Undesignated statutory references are to the Government Code.

[3] *McDonnell Douglas Corp. v. Green* (1973) 411 U.S 792 [36 L.Ed.2d 668] (*McDonnell Douglas*).

any potential discriminatory motive, and ordinary summary adjudication principles govern.  (Cf. *ibid*.)

Section 12940, subdivision (a) "protects an employee against unlawful discrimination with respect not only to so-called 'ultimate employment actions' such as termination or demotion, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career."  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1053-1054 (*Yanowitz*).)  What constitutes an adverse employment action under FEHA "is not, by its nature, susceptible to a mathematically precise test, and the significance of particular types of adverse actions must be evaluated by taking into account the legitimate interests of both the employer and the employee." (*Id*. at p. 1054.)

A reasonable trier of fact could not find that the fitness for duty order was an adverse employment action.  The City's policy manual expressly authorized fitness for duty examinations.  The City's personnel policy does not list fitness for duty examinations in its discipline tiers, and Chief Cash declared he "did not mean it as discipline."  Appellant was paid while on leave pending the two examinations.  After passing the examinations, he was cleared to return to full duty in April, the month after the fitness for duty order issued.  That order did not cause appellant professional harm, and such harm cannot reasonably be inferred from appellant's resignation over a year later.

While section 12940, subdivision (f)(1) generally prohibits employers from requiring medical or psychological examinations, an exception exists for examinations that the employer "can show to be job related and consistent with business necessity."

6

(§ 12940, subd. (f)(2); see also Cal. Code Regs., tit. 2, § 11071, subd. (d)(1).) Ensuring firefighters are physically and psychologically prepared for their dangerous and important work qualifies as a business necessity. (See, Cal. Code Regs., tit. 2, § 11065, subd. (b) ["'[b]usiness necessity' . . . means that the need for the disability inquiry or medical examination is vital to the business"].) When speaking with Chief Cash about why he was sick, appellant acknowledged "stress is a part of the job. Of course there's stress involved." Though appellant denied stress caused him to call in sick, his acknowledgement of its presence substantiates Chief Cash's concern and the fitness for duty order's consistency with business necessity.

*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359 is distinguishable. *Horsford* concluded that "in the *particular factual context of employment as a peace officer*, suspension from duty for lying on a police report . . . , even if the leave is with pay, constitutes adverse employment action." (*Id.* at p. 374, italics added.) "[S]uch a charge can destroy a police officer's career." (*Ibid.*) Nothing suggests a fitness for duty order for a fire captain poses a comparable threat of career destruction.

Appellant argues that "[e]ven if the invasive testing was not an adverse action [he] could not withstand harassment and retaliation, which forced him to find a different position outside of Respondents [*sic*] employment, which constitutes an adverse employment action." Appellant contends that "[w]hether or not Respondent's actions in themselves were an adverse action, they as viewed together can be regarded as the constructive discharge of Appellant." We conclude appellant was not constructively discharged as a matter of law.

7

"'Constructive discharge, like actual discharge, is a materially adverse employment action.'" (*Steele v. Youthful Offender Parole Bd.* (2008) 162 Cal.App.4th 1241, 1253.) "In order to establish a constructive discharge, an employee must plead and prove, by the usual preponderance of the evidence standard, that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1251 (*Turner*).)

"[A]n employee cannot simply 'quit and sue,' claiming he or she was constructively discharged. The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job . . . . The essence of the test is whether, under all the circumstances, the working conditions are so unusually adverse that a reasonable employee in plaintiff's position ""would have felt compelled to resign.""" (*Turner*, *supra*, 7 Cal.4th at pp. 1246-1247.)

The evidence would not allow a reasonable trier of fact to find or infer that appellant's working conditions were so unusually adverse a reasonable employee would have felt compelled to resign. Appellant's conclusory allegations of and references to harassment, discrimination, and retaliation are unavailing. The record belies any constructive discharge claim. Tension between a union advocate and management is insufficient. Conduct like Human Resources Manager Gerber misplacing retirement documents or using the term "Tacoma Fire" does not produce egregious working conditions. Moreover,

the no confidence vote by fire department employees against Chief Cash fails to create a triable issue of fact. Conditions like a lack of training opportunities and Chief Cash hiring his personal mentee do not compel resignation. Indeed, appellant worked at the department for over a year after the vote of no confidence document is dated. (*Turner*, *supra*, 7 Cal.4th at p. 1255 [passage of time can undermine intolerability assertion].)

Under the totality of the circumstances in the record, appellant was not constructively discharged as a matter of law.

*Retaliation Claim*

Appellant's FEHA retaliation claim under section 12940, subdivision (h) also requires an adverse employment action. (*Yanowitz*, *supra*, 36 Cal.4th at p. 1042.) Summary adjudication was proper on that claim as well for reasons articulated above.

DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

9

Patricia L. Kelly, Judge

Superior Court County of Santa Barbara

_____

Ferrone Law Group, Stefon L. Jackson, for Plaintiff and Appellant.

Kessel and Megrabyan, Elizabeth M. Kessel, Armineh Megrabyan, and Maria Markova, for Defendants and Respondents.